———————————

No. 96-1414

———————————

United States of America,            *
                                     *
     Plaintiff - Appellant,          *
                                     *      Appeal from the United States
     v.                              *      District Court for the
                                     *      District of Minnesota.
David R. Brown,                      *
                                     *
     Defendant - Appellee.           *

———————————

Submitted:  October 22, 1996

Filed:    March 11, 1997
———————————

Before FAGG, HEANEY, and HANSEN, Circuit Judges.
———————————

HANSEN, Circuit Judge.

     The government appeals the order of the district court[1] granting Defendant David R. Brown's motion for a new trial. United States v. Brown, 913 F. Supp. 1324 (D. Minn. 1996).  A jury convicted Brown on two counts of violating the Medicaid/Medicare Anti-kickback statute, 42 U.S.C. § 1320a-7b(b) (1994).  The district court granted Brown's post-verdict motion for a new trial based on its findings that the jury was exposed to prejudicial extrinsic information and that certain members of the jury engaged in misconduct.  The government contends that Brown waived any claim to a new trial that he might have had.  We affirm the order of the district court.

———————————

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

On August 4, 1994, the government indicted Caremark, Inc. (Caremark), Brown, and four other individual defendants alleging that these parties participated in a kickback scheme involving multiple counts of mail fraud, wire fraud, money laundering, and violations of the Medicaid/Medicare Anti-kickback statute. Among other allegations, the government claimed that Brown, a physician practicing pediatric endocrinology, solicited and received payments from Caremark, a home health care company that was the exclusive home health distributor of an expensive growth hormone called Protropin, in exchange for Brown's referral of patients for whom he prescribed Protropin and who were participants in the Medicaid program.[2]

On June 20, 1995, approximately one month before the trial was set to begin, Caremark pleaded guilty to one count of mail fraud and agreed to pay a total of $161 million in fines, penalties, and restitution. Consequently, only Brown and his four co-defendants[3] proceeded to trial on August 2, 1995.

On October 3, 1995, at the close of the government's case-in-chief, the district court granted the four co-defendants' motions for judgment of acquittal on all counts. The court also granted Brown's motion for judgment of acquittal on several counts but directed the trial to proceed on 19 remaining counts against Brown.

---

[2]In the normal course of business, physicians prescribing Protropin for their patients give the prescriptions to Caremark, and Caremark fills the prescriptions and delivers the Protropin to the patients' homes; Caremark then submits the bills for the Protropin to the patients' insurance companies.

[3]Three of Brown's co-defendants were executives at Caremark, while the fourth co-defendant was an executive at Genentech, Inc.--the company that first developed and now manufactures Protropin.

Two days later, on October 5, both the government and Brown's counsel asked the court to conduct an individual voir dire of the jurors based on their belief that the jurors may have witnessed Brown's co-defendants celebrating in the hallway following their acquittals on October 3 and that the jurors may have been exposed to ensuing news accounts that referred to the co-defendants' acquittals and Caremark's previous guilty plea and agreement to pay a $161 million fine. The court agreed, and on the next day of trial, October 10, the court conducted a voir dire of the jurors initially as a panel and then individually in chambers. The court's inquiry revealed that several jurors were aware that Brown's co-defendants were acquitted; some jurors witnessed celebratory activity by Brown's co-defendants while others had friends or relatives, who had read or heard the news reports, inform them that Brown was the only remaining defendant. At this time, however, none of the jurors stated that they were aware of Caremark's guilty plea and payment of the fine.[4] At the conclusion of this voir dire, neither the government nor defense counsel moved for a mistrial. Instead, they opted for a limiting instruction. The court gave a limiting instruction in open court explaining that all of the charges against Brown's co-defendants and some of the charges against Brown had been disposed of, but the jury was not to concern itself with the reasons for their disposition and that its verdict regarding the remaining charges against Brown was to be based solely on the evidence that had been received in the courtroom.

The following day, the parties made their closing arguments, and the court instructed the jury. The jury began their deliberations the next day -- Thursday, October 12. On Monday,

---

[4]One juror claimed that another juror told her that he had read an article about the case that referred to Caremark's guilty plea and payment of the fine, but he denied having read the article when he was questioned by the court.

-3-

October 16, the court received a note from juror Dale Dickinson that read:

> Judge Doty, I am concerned about information that has come to the jury but was not part of the evidence. On Thursday, October 12, when [Juror Asphaug] was asked to comment, he stated that "[Juror Ulmen] and I have information that the rest of you do not have." He went on to say that "Care mark [sic] was found guilty of this same crime and paid a fine of $367,000,000." [Juror Shelley] quickly stated that she did not want this information and did not wish to hear any more . . . . At the end of the day on Friday I saw this same information affect another discussion.

Brown, 913 F. Supp. at 1327 (quoting 10/16/95 Tr. at 6). At a meeting with lawyers for Brown and the government, the court explained that it had received this note and disclosed its contents. The court offered an instruction to be sent back to the jury. After some discussion and modifications made by defense counsel, the parties agreed to send the following written instruction back to the jury:

> The court has learned that discussions concerning matters that are not part of this case have occurred during jury deliberations. Please remember the court's instructions that you are not to consider in your deliberations on this defendant anything that may have occurred outside the courtroom. Such matters are not proper evidence and must be entirely disregarded. Your verdict must be based only on the evidence in this case.

Id. Neither party made a motion for mistrial.

On October 19, after three additional days of deliberations, the jury found Brown guilty on two of the nineteen counts submitted against him. After the verdict was published, and over the government's objection, the court granted defense counsel's request to have the court individually voir dire the jurors in chambers regarding the possibility that they had considered extrinsic

-4-

information in reaching their verdict.  Although most of the jurors denied considering any extrinsic information, two jurors revealed that Caremark's plea and payment of the fine continued to be considered by the jury. (Appellant's App. at A-125-26, A-129-30.)

Subsequently, Brown filed a motion for a new trial.  After considering the government's response, the district court granted Brown's motion for a new trial based on juror misconduct and the jury's exposure to extrinsic information.  <u>Brown</u>, 913 F. Supp at 1333.

## II.

The government contends that the dispositive issue in this case is whether Brown waived his claim to a new trial.  While we review a district court's decision to grant a new trial for an abuse of discretion, <u>United States v. Blumeyer</u>, 62 F.3d 1013, 1015 (8th Cir. 1995), the underlying issue of whether Brown waived his claim is a mixed question of law and fact, for which we review the district court's factual findings for clear error and its legal conclusion de novo.  See <u>United States v. Farris</u>, 77 F.3d 391, 396 (11th Cir. 1996); <u>United States v. Veltman</u>, 9 F.3d 718, 721 (8th Cir. 1993).  Thus, our review in this case involves two steps: first, given the undisputed factual findings of the district court, we review de novo the court's determination that Brown did not waive his claim to a new trial; then, based on our decision on the waiver issue, we determine whether the district court abused its discretion in granting Brown a new trial.  See <u>Harmon v. United States through Farmers Home Admin.</u>, 101 F.3d 574, 586 (8th Cir. 1996) (finding that application of abuse of discretion standard involves reviewing legal questions de novo and factual findings for clear error); <u>Waible v. McDonald's Corp.</u>, 935 F.2d 924, 926 (8th Cir. 1991) (same).

A.

The government argues that Brown waived his right to a new trial by opting for limiting instructions instead of moving for a mistrial each time he learned that the jury had been exposed to extrinsic information. The government relies upon several cases holding that a party who becomes aware of a problem with the jury before the verdict is rendered but fails to inform the court of the problem waives any subsequent claim the party might have to a new trial based on such jury difficulties. See, e.g., United States v. Hoelscher, 914 F.2d 1527, 1542-43 (8th Cir. 1990); United States v. Dean, 667 F.2d 729, 733-34 (8th Cir. 1982). The Fifth Circuit succinctly articulated this principle when it stated that "a defendant cannot learn of juror misconduct during the trial, gamble on a favorable verdict by remaining silent, and then complain in a post-verdict motion that the verdict was prejudicially influenced by that misconduct." United States v. Jones, 597 F.2d 485, 488 n.3 (5th Cir. 1979). The government contends that on both October 10 and October 16, Brown and his lawyers were fully aware of the extent and nature of the extrinsic information reaching the jury and that by failing to move for a mistrial on those occasions they waived their right to a new trial. Additionally, the government argues that the only "new" information revealed to Brown from the court's post-verdict voir dire on October 19 was the effect that the extrinsic information had on the jurors' decisions and that such information is barred by Federal Rule of Evidence 606(b) and consequently cannot form the basis for a new trial.

We believe that the district court correctly concluded that Brown did not waive his right to seek a new trial. "[W]aiver is the `intentional relinquishment or abandonment of a known right.'" United States v. Olano, 507 U.S. 725, 733 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). In this case, Brown did not withhold the incidents of jury misconduct from the trial court.

-6-

The court was fully aware of the problems with the jury as soon as, if not sooner than, Brown was. Moreover, when Brown agreed to have the court give limiting instructions to the jury, he justifiably presumed that the jury would follow the court's instructions to disregard the extrinsic evidence. See Ryan v. Board of Police Comm'rs, 96 F.3d 1076, 1082 n.1 (8th Cir. 1996) (jury presumed to follow court's instructions). It wasn't until the court's post-verdict voir dire on October 19 that Brown became aware that, despite the court's instructions to the contrary, the jury had continued to consider the fact that Caremark pleaded guilty and agreed to pay a $161 million fine.[5] Consequently, we cannot say that Brown waived his right to a new trial. Cf. Yannacopoulos v. General Dynamics Corp., 75 F.3d 1298, 1305 (8th Cir. 1996) (finding that a party who had not objected to the court's limiting instruction had waived his claim to new trial where there was no evidence that the jury had disregarded the instruction).

Moreover, we do not believe that Rule 606(b) prohibits the consideration of the evidence that the jury continued to consider Caremark's plea and payment of a fine. Although Rule 606(b) generally prevents a juror from testifying "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind," the rule does allow jurors to "testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Fed. R. Evid. 606(b). We believe that under Rule 606(b) the district court properly considered the testimony of the jurors to the extent that their testimony revealed that the extrinsic information continued to be considered by the

---

[5]Although Brown, on appeal, submits evidence that the court's second limiting instruction reached only one member of the jury, we limit our review to the record as it appeared before the district court.

jury. Admittedly, some of the court's questions as well as portions of the jurors' testimony may have encroached areas that are off-limits under Rule 606(b). (<u>See</u> Appellant's App. A-126, A-130.) In granting Brown's motion for a new trial, however, the district court addressed this problem and explicitly based its decision only on evidence admissible under Rule 606(b). <u>Brown</u>, 913 F. Supp. at 1331 n.4. Because Brown did not know that the jury continued to consider the prejudicial extrinsic information regarding Caremark until after the verdict, we conclude that the district court properly determined that Brown had not waived his right to a new trial.

B.

In its reply brief, the government for the first time argues that even if Brown did not waive his right to a new trial, he is not entitled to one because the strength of the government's case against Brown sufficiently outweighed any possible prejudice caused by the extrinsic evidence. Absent some reason for failing to raise an argument in an opening brief, this court will not consider an argument first raised in a reply brief. <u>United States v. Darden</u>, 70 F.3d 1507, 1549 n.18 (8th Cir. 1995). The government has not offered any justification for its failure to raise this issue in its initial brief; consequently, we choose not to review it.[6]

Having found that Brown did not waive his right to a new trial, we hold that the district court did not abuse its discretion in granting Brown's motion for a new trial.[7] [8]

---

[6]We note that even while raising this argument in its reply brief, the government emphasizes that "the <u>sole</u> issue on this appeal" is whether Brown waived his right to a new trial. (Appellant's Reply Br. at 5.)

[7]So holding, we need not review the court's decision to grant a new trial on the alternative basis of individual juror misconduct.

[8]We also find it unnecessary to rule on appellee's motion for enlargement of the record.

III.

Accordingly, we affirm the order of the district court.

A true copy.

    Attest:

       CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.