# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

--------------------
No. 98-4102WM
--------------------

| | |
|---|---|
| R.R. and Barbara Anderson, | * |
| | * |
| Appellants, | *  On Appeal from the United |
| | *  States District Court |
| v. | *  for the Western District |
| | *  of Missouri |
| Ford Motor Company, | * |
| | * |
| Appellee. | * |

---------------

Submitted: June 16, 1999

Filed:    July 29, 1999

---------------

Before BOWMAN and HEANEY, Circuit Judges, and LONGSTAFF,* District Judge.

---------------

RONALD E. LONGSTAFF, District Judge.

R.R. and Barbara Anderson ("the Andersons") filed this diversity action against Ford Motor Company ("Ford"), alleging that a faulty restraint system in a 1991 Ford Probe caused their daughter's fatal injuries. The case went to trial in May 1997, and the jury awarded plaintiffs

$700,000 in compensatory damages. In October 1997, the district court[1] granted Ford's motion for new trial, finding that Ford had been prejudiced by juror misconduct, and that the opinions rendered by one of plaintiffs' expert witnesses were unscientific and unreliable.

A second trial held in October 1998 resulted in a defense verdict. Plaintiffs now appeal the district court's October 1997 order for a new trial.[2] We affirm.

## I.

On August 29, 1992, the Andersons' daughter, Rise′, was driving her 1991 Ford Probe when she was involved in a single vehicle collision. As a result of the accident, Ms. Anderson fractured the seventh and eighth ribs on her right side, the eighth rib on her left side, and suffered a transectional cut across her liver. She died from her injuries within two days of the accident.

Her parents claim their daughters' death was caused by a faulty restraint system not designed for persons of small stature. Due to Ms. Anderson's height, (approximately 5' 2"), she drove with the seat in a nearly full-forward position. The Andersons contend that as the seat was moved forward, the design of the belt system caused the torso belt webbing to cross over soft abdominal tissues, rather than over bony structures. According to the Andersons, this improper positioning caused crash forces to focus on the abdominal area, thereby injuring Ms. Anderson's ribs, liver and spleen. Ford disputes this theory, however, arguing that Ms. Anderson's injuries occurred because she misused her shoulder belt by placing the shoulder belt under her left arm.

During the first trial, Peter Bertelson, plaintiffs' expert, testified about the design relationship between occupant size and restraint system effectiveness. Dr. Bertelson testified that the restraint system was not properly designed for small individuals due to the alleged asymmetry of the lap belt restraints. According to Dr. Bertelson, the asymmetry was caused by the fact that one of the lap belt anchors was attached to the floor and one was attached to the seat.

On cross-examination, Dr. Bertelson admitted that he did not know where the anchors for

\* The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa, sitting by designation.

[1] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

[2] The Andersons did not appeal the verdict in the second trial.

the lap belt of the 1991 Probe were located. He further admitted he did not know whether the inboard anchor moved when the seat moved forward along the seat track.[3]

Following return of the jury's verdict and entry of judgment, Ford obtained evidence that a juror, Dan Willis, had conducted an improper out-of-court test on the 1991 Ford Probe's seat belt system. Ford moved for judgment notwithstanding the verdict or for a new trial on the grounds of juror misconduct and on the grounds that Dr. Bertelson's opinions regarding the asymmetry of the lap belt anchors were unreliable and unscientific.

The district court conducted a hearing to evaluate the alleged juror misconduct. During this hearing, five jurors, including Mr. Willis, testified regarding their knowledge of Mr. Willis' alleged tests. Four jurors testified that Mr. Willis told them during deliberations that he had visited a Ford dealership to conduct a fit test of a 1991 Probe's restraint system. Mr. Willis allegedly used his son, who was 4' 8" at the time, to conduct the test.

Two jurors testified Mr. Willis told them the restraint system did not fit his son, and that Mr. Willis admitted he knew the test was against the court's instructions. Mr. Willis testified he did not actually conduct the test, but simply told the other jurors he would *like to do so.*

The district court granted Ford's motion for new trial on both grounds raised by Ford. With regard to the alleged juror misconduct, the court found that Mr. Willis had in fact conducted the test, that his misconduct involved a controlling issue in the case, and that Mr. Willis used the test to form his opinion on the controlling issue. The court further found the experiment was contrary to the court's instructions,[4] and that Mr. Willis was not truthful with the court. Accordingly, the district court determined Mr. Willis' conduct had prejudiced Ford.

With regard to the expert witness testimony, the district court found that Dr. Bertelson rendered an opinion that the restraint system was defective due to asymmetry and admitted he did not know where the anchors were placed on the 1991 Ford Probe or whether the anchors actually moved with the seat when it was adjusted. The court therefore concluded Dr. Bertelson was

---

[3]  The Andersons contend that on cross-examination, counsel for Ford confused the seat *belt* anchorage points with the point at which the seat *track* is attached to the floorboard.

[4]  In Instruction No. 6, the Court cautioned the jurors that they should "not do any research or make any investigation about the case on [their] own."

without sufficient knowledge to render such an opinion, and that his opinion was unscientific, unreliable, and prejudicial to Ford.

## II.

We will first address the district court's treatment of the alleged juror misconduct. This Court reviews a district court's grant or denial of a motion for new trial for abuse of discretion. *Lockley v. Deere & Co.*, 933 F.2d 1378, 1385 (8th Cir. 1991).

"In a civil case, the exposure of jurors to materials not admitted into evidence mandates a new trial only upon a showing that the materials are prejudicial to the unsuccessful party." *Banghart v. Origoverken, A.B.*, 49 F.3d 1302, 1306 (8th Cir. 1995). The Andersons' primary argument on appeal is that there was no *proof* of prejudice resulting from the alleged extraneous material; rather, the court *inferred* defendant was prejudiced. We disagree.

Federal Rule of Evidence 606(b) provides that a juror may testify as to "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Fed. R. Evid. 606(b). During the inquiry, "[j]urors should not be asked whether their deliberations were prejudiced by extraneous information or outside influences, [however]." *Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132, 1142 (7th Cir. 1992). The district judge must use the testimony to decide "whether there is a reasonable possibility that the communication altered [the jury's] verdict." *Id.* (internal citations omitted).

In the present case, the district court properly took testimony from several jurors solely on the issue of whether Mr.Willis' test was brought to the attention of other jurors. *Id.* Four jurors testified Mr. Willis told them during deliberations he had conducted a fit test of the 1991 Probe restraint system on his son. As noted by the court in *Kilgore v. Greyhound Corp.*, 30 F.R.D. 385, 389 (E.D. Tenn. 1962), the other jurors "would have been naive indeed to have accepted as 'expert testimony' [Mr. Willis'] conclusions from his experiences out of court."

Nevertheless, in the present case, the district court did not base its order for a new trial on

4

whether *other* jurors inappropriately considered Mr. Willis' test results. Rather, the district court found *Mr. Willis himself* was biased in his consideration of the issues, which therefore resulted in prejudice to Ford. Specifically, the district court found Mr. Willis "based his judgment on an out-of-court experiment in regard to a crucial issue, with the knowledge that said experiment was contrary to the instructions of the Court and improper, and further . . . that juror Willis was not truthful with the Court in regard to the out-of-court experiment that he conducted." (October 4, 1997 Order Granting Ford's Motion for New Trial, at 3-4). In short, the district court found the fact Mr. Willis conducted the test in violation of the court's directive constituted evidence of prejudice.

The above conclusions were properly within the province of the district court, and support a conclusion that there was "a reasonable possibility that the communication altered [the jury's] verdict." *Artis*, 967 F.2d at 1142. Accordingly, the district court did not abuse its discretion in ordering a new trial based on Mr. Willis' alleged misconduct.

Because the Andersons appealed only the order for new trial, and because juror misconduct is a sufficient, independent reason for granting a new trial, we need not address whether the district court abused its discretion in excluding Dr. Bertelson's testimony.[5]

The decision of the district court is AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5] The Court also declines to rule on Ford's motion to strike portions of the record on appeal, as the district court's statements in September 1998 were irrelevant to his October 1997 conclusion that one particular juror was prejudiced against Ford.