# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3238

_____

Timothy Moore; Sylvia Moore,　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　　　Appellees,　　　　　*
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　　*　District of North Dakota.
American Family Mutual Insurance　　　*
Company, a Wisconsin Corporation,　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　　　Appellant.　　　　　*

_____

Submitted:  June 10, 2009
Filed:  August 14, 2009 (Corrected: 9/24/2009)

_____

Before MURPHY, ARNOLD, and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Timothy Moore bought an unoccupied duplex located in a flood plain from Walsh County, North Dakota, on condition that it be moved by a date certain, and American Family Insurance Company insured the property for $50,000. After a fire destroyed the building about five weeks before the deadline for moving it had expired, American Family denied Mr. Moore's insurance claim on the ground that the fire was a result of arson for which Mr. Moore was responsible. Mr. Moore and his wife, Sylvia Moore, then brought suit against American Family, claiming that it had breached the insurance contract and had acted in bad faith when it denied Mr. Moore's claim. A jury found for the Moores on both claims: It awarded them $48,414.97 on

their contract claim, and $1,150,000 in actual damages and $1,150,000 in punitive damages on their bad faith claim. The district court[1] then denied American Family's post-verdict motion for judgment as a matter of law (JAML), a new trial, or remittitur.

American Family now appeals, arguing that it was not liable for bad faith as a matter of law, that the evidence did not support awards for actual damages on the bad faith claim or for punitive damages, that the district court erred by not declaring a mistrial for juror misconduct, and that the district court improperly instructed the jury. We affirm.

I.

A district court must grant a motion for JAML when "a reasonable jury would not have a legally sufficient basis to find for a party on that issue." Fed. R. Civ. P. 50(a). The Moores, at the end of their case on the breach of contract claim, moved for JAML on the matter of whether American Family had breached the insurance contract, and the district court denied the motion. American Family maintains that this ruling is fatal to the Moores' claim of bad faith: North Dakota law provides that an insurance company is not guilty of bad faith when it denies a claim that is "fairly debatable." *See Hartman v. Estate of Miller*, 656 N.W.2d 676, 681 (N.D. 2003). According to American Family, because the district court held that there was a fact question about whether the insurer had breached the contract by refusing to pay Mr. Moore's claim, that claim was necessarily fairly debatable, and thus American Family could not have acted in bad faith by denying it. We conclude, however, that American Family failed to preserve for review the contention that it was entitled to JAML on the bad-faith claim.

---

[1]The Honorable Rodney S. Webb, late a United States District Judge for the District of North Dakota.

-2-

American Family originally raised this issue and two other matters in an oral motion for JAML after the plaintiffs submitted their case. The district court denied the motion, and the insurer orally renewed it at the close of the evidence. *See* Fed. R. Civ. P. 50(a). After the jury returned a verdict for the Moores, American Family filed a post-trial motion under Rule 50(b). The motion stated, in part, that the defendant was "renew[ing] the motions for JAML that [it] made, raised and asserted during the trial of this action" but did not specify the grounds for granting JAML. In compliance with the court's rule requiring that all motions be accompanied by a supporting memorandum, *see* N.D. Civ. R. 7.1, American Family filed a forty-page memorandum that listed over twenty grounds for relief, including one of the grounds raised in its original Rule 50(a) motion. But nothing in the supporting memorandum indicated that American Family was renewing its request for judgment as a matter of law on the bad faith claim.

In its written order denying the post-trial motion, the district court specifically addressed, in turn, each ground that American Family raised in its lengthy memorandum, but the court did not rule on whether the evidence supported the bad faith claim, most likely because it did not think that it was being asked to. Federal Rule of Civil Procedure 7(b)(1) requires that all motions "state with particularity the grounds for seeking [an] order," and we think therefore that American Family did not effectively make a Rule 50(b) motion on this ground. Where a party fails to make a Rule 50(b) motion in the district court regarding an issue, there is nothing for the court of appeals to review, and we thus lack the power to review the matter. *See E.E.O.C. v. Southwestern Bell Tel. Co.*, 550 F.3d 704, 708 (8th Cir. 2008).

We note, moreover, that Local Rule 7.1 further provides that "[a] moving party's failure to serve and file a memorandum in support may be deemed an admission that the motion is without merit." N.D. Civ. R. 7.1. Similarly, we generally deem an issue waived if an appellant's brief does not include an argument addressing that issue, and we have explained that this rule promotes "proper judicial

administration."  *See, e.g., Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) (internal quotation marks and citation omitted); *see also* Fed. R. App. P. 28(a)(9).  As we have already said, American Family did not even assert in its memorandum that it was entitled to JAML on the bad-faith claim, much less provide an argument supporting that assertion.  We therefore do not believe that the district court, even if it had the discretion to do so, was obligated to treat the issue as having been raised, and we therefore do not see how the court could have erred by not entering judgment for American Family on the Moores' bad faith claim.

## II.

American Family also maintains that the district court erred by giving Instruction 13, which told the jury that it could consider as evidence of bad faith the insurer's violations of the North Dakota Prohibited Practices in Insurance Business Act, *see* N.D. Cent. Code § 26.1-04-03.  We review jury instructions for an abuse of discretion.  *See Gill v. Maciejewski*, 546 F.3d 557, 563 (8th Cir. 2008).  Our review is limited to a determination of "whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury."  *Id.* (internal quotation marks and citations omitted).  Instruction 13 read in pertinent part:  "If American Family, who is engaged in the business of insurance, performed, without just cause and with such frequency as to indicate a general business practice, one or more of the following unfair practices, you may consider violation of this law as evidence of bad faith on the part of American Family."  The instruction then went on to rehearse several of the unfair claim settlement practices listed in § 26.1-04-03, the relevant North Dakota statute.

For the first time on appeal, American Family challenges Instruction 13 on legal grounds, contending that an insurer's violation of § 26.1-04-03 is not evidence of bad faith.  We conclude that American Family waived this objection by failing to raise it during the instruction conference before the case was submitted to the jury.  *See* Fed. R. Civ. P. 51; *Niemiec v. Union Pacific RR. Co.*, 449 F.3d 854, 857-58 (8th Cir. 2006).

Parties must make a timely objection to jury instructions, stating "distinctly the matter objected to and the grounds for the objection," in order to give the district court an opportunity to correct errors before submission, and, relatedly, to prevent a losing party from obtaining a new trial by pointing out an error only after receiving an unfavorable verdict. *See* Fed. R. Civ. P. 51(c); *Horstmyer v. Black & Decker, Inc.*, 151 F.3d 765 (8th Cir. 1998). Because American Family did not do so, it waived its legal objection to the instruction, absent plain error.

Though we may grant plain error relief when instructional error is plain, affects a party's substantial rights, and " 'seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings,' " *Cedar Hill Hardware and Const. Supply, Inc. v. Insurance Corp. of Hannover*, 563 F.3d 329, 351 (8th Cir. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 732-36 (1993)), these circumstances are absent here. At a minimum, we believe that evidence that an insurer's conduct violates a statute prohibiting unfair settlement practices is relevant to whether the insurer acted in bad faith. As one commentator has remarked, there is "some logic" to using evidence of violations of statutes addressing unfair insurance practices in bad faith actions, just as evidence of violations of safety codes have been used to show negligence. *See* Lee R. Russ & Thomas F. Segalla, 14 Couch on Ins. § 204.47 (3d ed.). And American Family, consistent with this view, raised no objection when the Moores' attorney elicited expert testimony that a violation of § 26.1-04-03(9) was "evidence of an insurance company's bad faith" and that American Family had violated particular provisions of that statute. American Family later asked its own expert whether American Family had violated the Act. We therefore do not believe that the error, if any, was plain.

American Family also maintains that even if the instruction correctly stated the law, the court erred in giving it because the evidence, at best, supported a finding that the insurer committed the unfair claim settlement practices listed in the instruction only as to the Moores. Therefore, American Family argues, the evidence was

insufficient to establish that it engaged in any of the practices with a frequency indicating a general business practice as the statute and instruction required. *See* N.D. Cent. Code 26.1-04-03.9. But American Family's own expert, Duane Ilvedson, testified that Mr. Moore's file was typical: This is evidence from which a jury could infer that American Family committed prohibited acts with a frequency indicating a general business practice because it suggests that the alleged practices committed in Mr. Moore's case were also committed by American Family in other cases. We therefore detect no error here. We believe, moreover, that the jury instructions, as a whole, "fairly and adequately submitted the issues in the case to the jury," and that the court therefore did not abuse its discretion in giving them. *See Gill*, 546 F.3d at 563.

### III.

American Family next contends that it was entitled to a new trial because of juror misconduct. After the case was submitted to the jury, one of the jurors did some research on the internet and determined what American Family's profits had been in the past year. The district judge then excused the juror from further participation, but American Family argues that the judge should instead have declared a mistrial or should have granted a new trial based on the juror's misbehavior.

Before the jury reached a verdict, the foreperson sent a note to the district judge stating that one of the jurors had done research on the earnings of American Family but had "not relayed his findings to the other jurors." After the court read the note to counsel, American Family requested a mistrial; the court denied the motion but had the juror immediately removed from the jury room and dismissed him. After explaining to counsel that he was going to reprimand the dismissed juror, the district judge spoke to the juror on the record without counsel present: The juror admitted that he had researched American Family's profits for the last year, but he repeatedly assured the court that he had not shared that information with the other jurors. He said that when he told the other jurors that he had done research, "everyone" disapproved, and he then put the information out of his mind. The attorneys were provided a

-6-

transcript of this proceeding. The court determined that the other jurors had immediately stopped the juror in question from reciting the specifics of his research and that they appeared to be following the court's admonitions not to consider extraneous information. After trial, American Family filed an affidavit of the foreperson, who said that the dismissed juror had told the other jurors that American Family "makes huge profits and can afford to pay." The court denied the new trial motion, concluding that the juror's statement that American Family could afford to pay did not show prejudice since it was "not likely to be a major revelation" to members of the jury. We agree.

"In a civil case, the exposure of jurors to materials not admitted into evidence mandates a new trial only upon a showing that materials are prejudicial to the unsuccessful party." *Peterson ex rel. Peterson v. General Motors Corp.*, 904 F.2d 436, 440 (8th Cir. 1990). The district court must consider relevant testimony and other evidence as to what occurred to determine "whether there is a reasonable possibility that the communication altered the jury's verdict," and we review the district court's decision for an abuse of discretion. *See Anderson v. Ford Motor Co.*, 186 F.3d 918, 920-21 (8th Cir. 1999) (internal quotation marks and citation omitted), *cert. denied*, 528 U.S. 1156 (2000).

American Family would like us to rely on *Anderson* and hold that a new trial is necessary, but that case is distinguishable. In *Anderson*, the district court granted a new trial after learning that a juror had conducted an out-of-court test of a seat belt system that the jury then found was defective. The design of the seat belt system was not common knowledge and was central to the case. In contrast, we think the misconduct here bordered on the innocuous since people know that insurance companies can generally afford to pay settlements. *See Kehm v. Procter and Gamble Mf'g Co.*, 724 F.2d 613, 623 (8th Cir. 1983). And unlike the dismissed juror here, the offending juror in *Anderson*, whom the district court found was biased by his "out-of-

court experiment with regard to a crucial issue," participated fully in reaching the verdict. Finally, just as we upheld the district court's exercise of its discretion in *Anderson*, we do so here: We conclude that the district court did not abuse its discretion in denying American Family's motion for a mistrial or a new trial based on juror misconduct.

IV.

American Family also challenges the damage award of $1,150,000 on the bad faith claim because it is not supported by the evidence and was excessive. Mr. Moore claimed damages for uninsurability, economic loss, loss of reputation in the community, and emotional distress.

American Family maintains that damages awarded for Mr. Moore's supposed uninsurability were unsupported by the evidence because the testimony that Mr. Moore would not be able to get insurance was speculative. American Family, however, failed to raise this ground in its Rule 50(a) motion and a party cannot raise a question about the sufficiency of evidence to support a damage award for the first time in a motion under Rule 50(b). *See Day v. Toman*, 266 F.3d 831, 837 (8th Cir. 2001). In any event, there was indeed evidence that American Family submitted information to the Property Insurance Loss Register (PILR), a database to which all insurance companies report, indicating that Mr. Moore's claim had been denied for arson and fraud. And there was testimony that once information is submitted to this database it can never be removed and that insurance companies do not insure arsonists. Since Mr. Moore was a farmer with multiple vehicles that needed to be insured in order for him to earn income, a loss of insurance might well cause him ruinous economic injury. We conclude that this evidence made out a submissible case on the issue of insurability.

-8-

As for economic loss, Mr. Moore testified that he had intended to move the duplex that he purchased close to the Cavalier Air Force Station where rental housing is in demand. He asserted that if American Family had lived up to its contractual obligations, he would have used the insurance proceeds to rebuild the damaged duplex and that he could have rented it out at a rate of about $1,000 per month. American Family argues that any loss of rental income could not have resulted from its bad faith denial of Mr. Moore's claim and therefore this damage claim should not have been submitted to the jury. Their argument is essentially that Mr. Moore could not recover loss of rental income because once the claim is paid Mr. Moore would have the ability to earn the rental income. But this argument ignores the fact that Mr. Moore could suffer a loss of rental income during the time between the denial of his claim and the payment of the judgment in his favor. Mr. Moore therefore presented sufficient evidence to submit the claim for his loss of income.

American Family also contends that the Moores were not entitled to recover damages for loss of reputation in the community and emotional distress. According to the North Dakota Supreme Court, an "insurer's bad faith breach of its duties to an insured is likely to cause mental anguish" and juries have "wide discretion in evaluating and awarding ... damages" for such emotional distress. *See Ingalls v. Paul Revere Life Ins. Group*, 561 N.W.2d 273, 282-84 (N.D. 1997). Here the Moores offered testimony that they suffered severe embarrassment and emotional distress from Mr. Moore being labeled an arsonist, that Mr. Moore was experiencing chest pain and smoking more, and that he was worrying and losing sleep. Ms. Moore testified that her family "looked at her differently" and she wondered what other members of the community thought about her. We think that this was sufficient to make out a case for emotional distress and loss of reputation.

American Family's argument that the damage award was excessive also fails. We look to the law of the forum state in deciding the excessiveness of a verdict. *See*

*Taylor v. Otter Tail Corp.*, 484 F.3d 1016, 1019 (8th Cir. 2007). A verdict is excessive under North Dakota law "when the amount is so unreasonable as to indicate passion or prejudice on the part of the jury; or the award is so excessive as to be without support in the evidence; or the verdict is so excessive as to appear clearly arbitrary, unjust or such as to shock the judicial conscience." *Olmstead v. First Interstate Bank of Fargo, N.A.*, 449 N.W.2d 804, 807 (N.D. 1989). As we have already said, there was sufficient evidence to present each of the damage claims and the jury has wide discretion with respect to at least one aspect of the award. *Ingalls*, 561 N.W.2d at 283. We discern nothing in the damage award that indicates that passion or prejudice were at work nor can we conclude that the award is so clearly arbitrary as to shock the conscience. We therefore conclude that it was not excessive.

V.

Finally, American Family raises objections to the award of $1,150,000 for punitive damages. Under North Dakota law, an insurer that violates its duty of good faith is liable for punitive damages if it is "guilty by clear and convincing evidence of oppression, fraud, or actual malice." N.D. Cent. Code § 32-03.2-11.1. Section 32-03.2-11.4 limits punitive damage awards to no more than two times the compensatory damages, or $250,000, whichever is greater.

American Family asserts that the question of punitive damages should not have been submitted to the jury. Although North Dakota law does not permit a plaintiff to seek punitive damages in an original complaint, the plaintiff may move to amend the complaint to include such a claim. *See* N.D. Cent. Code § 32-03.2-11.1. Such a motion "must allege an applicable legal basis for awarding exemplary damages and must be accompanied by one or more affidavits or deposition testimony showing the factual basis for the claim." *Id.* Then, if the court finds "that there is sufficient evidence to support a finding by the trier of fact that a preponderance of the evidence proves oppression, fraud, or actual malice, the court shall grant the moving party

permission to amend the pleadings to claim exemplary damages." *Id*. The Moores moved to amend their complaint and the magistrate judge[2] granted the motion based on depositions that they had submitted in its support. Although American Family objected to the sufficiency of the evidence on the question of punitive damages in its Rule 50(a) motion, it did not raise this matter in its Rule 50(b) motion. We therefore have no power to review the matter. *See Southwestern Bell*, 550 F.3d at 708.

American Family also argues that the punitive damage award was so excessive as to be unconstitutional. "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). Three considerations are paramount in reviewing due process challenges to a punitive damage award: the degree of reprehensibility of the defendant's conduct, the ratio of the punitive damages awarded to the actual harm inflicted on the plaintiff, and the difference between the punitive damage award and the civil penalties authorized or imposed in comparable cases. *See BMW of North Am. v. Gore*, 517 U.S. 559, 574-75 (1996). We have examined each consideration and conclude that the punitive damages award is not unconstitutional.

In assessing the reprehensibility of the defendant's conduct, we consider whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Campbell*, 538 U.S. at 419. The existence of one of these considerations weighing in favor of the plaintiff may not be sufficient to support

---

[2]The Honorable Karen K. Klein, United States Magistrate Judge for the District of North Dakota.

a punitive damages award, and the absence of all of them "renders any award suspect." *Id.*

We conclude that several of these considerations are favorable to the Moores. We first observe that their injuries were not limited to financial losses. As we have said, the evidence showed that they suffered emotional distress, and Mr. Moore suffered from chest pain, was unable to sleep, and began to smoke more because he was accused of being an arsonist. The Moores presented evidence that American Family, without first conducting an adequate investigation, not only accused Mr. Moore of arson, it sent documents that included the accusation to the state insurance commissioner and reported to the PILR that Mr. Moore's claim was denied because of arson and fraud. Ms. Moore testified that the "PILR document is a scary scary thing" because it likely would prevent the Moores from getting insurance, which, in turn, could affect Mr. Moore's ability to continue his farming business; she also testified that it frightened her to think that they could have gone to jail but for their attorney's assistance. The decision to accuse someone of a serious felony such as arson should not be made lightly, and significant harm to the accused is foreseeable. We thus conclude that American Family's "tortious conduct" – labeling Mr. Moore an arsonist based on insufficient grounds – "evinced an indifference to or disregard of" the Moores' financial, emotional, and physical well-being. *See Campbell*, 538 U.S. at 419. With respect to other considerations, we note that American Family itself offered evidence that the Moores were financially vulnerable and the insurer was aware of that fact at the time it made the accusation, and American Family's expert's testimony supports an inference that the insurer's treatment of Mr. Moore's claim was typical of how it handled similar claims. *See id.* This record thus provides evidence of the reprehensibility of American Family's conduct.

The Supreme Court has stated that "few awards exceeding a single-digit ratio between punitive and compensatory damages [more than 9 to 1], to a significant degree, will satisfy due process." *Id.* at 425. While American Family argues that the

-12-

amount of compensatory damages awarded here was $48,414.97, that is patently incorrect because the jury awarded the Moores $1,150,000 on his bad faith claim and it is the finding of liability on that claim, not the contract claim, that underlies the equal award of punitive damages. Thus the relevant ratio here is one to one and well within the acceptable range.

As for civil penalties authorized or imposed in comparable cases, American Family could face suspension or revocation of its license if it knew or should have known that it was violating North Dakota's Unfair Insurance Practices Act. *See* N.D. Cent. Code § 26.1-04-13.1(b). Suspension or revocation of American Family's insurance license might well prove much more costly than a punitive damages award of $1,150,000.

American Family contends finally that the jury's punitive damage award was excessive under North Dakota law. It first directs our attention to N.D. Cent. Code § 32-03.2-11.5, which contains a list of "principles and factors" that must guide a jury in its determination of punitive damages and to which any award of such damages must conform. But these considerations are, for the most part, simply a restatement of those that the Supreme Court laid out in *Gore*, 517 U.S. at 574-75; and since we have already indicated that the punitive award here passes muster under that case, we necessarily conclude that there was no violation of the North Dakota statute.

In addition to the statutory principles to which North Dakota law requires punitive damage awards to conform, the North Dakota Supreme Court has mandated that such awards not be excessive. "Punitive damages are excessive when the amount of the award is so great that it indicates passion or prejudice on the part of the jury." *Dewey v. Lutz*, 462 N.W.2d 435, 443 (N.D. 1990). Since the award for punitive damages was equal to the amount awarded on the bad faith claim, it appears to us that the jury's verdict was not a result of passion or prejudice but represented an effort to deter future bad faith denials of insurance claims by American Family.

We therefore conclude that the punitive damage award was not excessive.

Affirmed.

_____