# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3443

_____

Ruby Hiser

*Plaintiff - Appellee*

v.

XTO Energy, Inc.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 10, 2014
Filed: October 3, 2014

_____

Before BENTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Ruby Hiser won a jury verdict against XTO Energy, Inc. XTO moved for a new trial, alleging that extraneous, prejudicial information was brought to the jury's attention. The district court denied the motion and declined to subpoena the jury foreperson. XTO appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

Hiser sued XTO, an oil-and-natural-gas producer, for damages caused by vibrations from drilling operations. The jury heard no evidence about hydraulic fracturing—a drilling method called "fracking." During deliberations, the jury asked the district court, "Were they drilling only or were they also fracking". The court instructed the jury: "You have all of the evidence in this case. You will have to make your decision based on what you recall of the evidence, and the instructions provided." The jury returned a verdict for Hiser.

XTO moved for a new trial, claiming the "jury verdict was tainted by the consideration of extra-record evidence." With the court's approval, XTO submitted two affidavits from juror Carrie Tranum. Hiser countered with affidavits from juror Novella Watson and foreperson Michael Horn. Tranum and Watson later testified at a hearing.

The three jurors agreed: during deliberations, Horn asked whether XTO fracked the well in question; one or more jurors expressed unfamiliarity with fracking; Horn explained his understanding of it; and, the jury did not discuss it after the court's instruction.

The jurors disputed the scope of the fracking discussion. According to Tranum, "the jury discussed that 'fracking' causes earthquakes and vibrations," and that discussion "concerned the negative impact that 'fracking' might have had on Plaintiff's property." Horn said he "did not make any negative comments about fracking," "did not imply or state to the jurors that fracking was actually used at XTO's well," and "simply repeated common knowledge about this [fracking] process." Watson said that "there was a short discussion about fracking in general."

The jurors disagreed whether, after the court's instruction, the jury discussed earthquakes. (At trial, the jury heard only three passing allusions to earthquakes.) Horn denied hearing any post-instruction discussion of earthquakes. Watson could not recall any post-instruction discussion of earthquakes, said no one told her such a discussion occurred, and denied participating in any discussion about earthquakes. Watson said, "Somebody may have mentioned earthquakes, but I think that was earlier on," and "It was just a little short sentence or something."

In her second affidavit, Tranum said she was "reasonably certain" that a discussion of earthquakes occurred post-instruction. Questioned by the court, Tranum admitted she was "not positive" whether the discussion occurred before or after the court's instruction. Later, during the same questioning, she said, "Once we got the [court's instruction], I do remember the earthquake discussion coming up . . . ." Tranum said the discussion lasted "maybe a couple of minutes"; "It was more than just a quick mention and then, you know, move on by one person." She could not "recall specifically" how many jurors participated in the discussion but said "it could have been five or six maybe." Asked about the context, Tranum said:

> At the time, I think there had been earthquakes maybe in the state that had been possibly related to gas well drilling and that that was just mentioned, just because I guess because it was in the news and it was something that people were familiar with.

Asked again about details, Tranum said:

> As far as the specifics, you know, I mean, it was mostly just anything that anyone could hear on the news or read in the paper, not any real scientific discussion, but just kind of a general mention of it.

The court denied XTO's motion for a new trial, concluding "that the jury's verdict was not influenced by extraneous, prejudicial information."[1] The district court also denied XTO's request to subpoena Horn, noting he had not responded to the court's requests for a voluntary interview.

XTO appeals, claiming an abuse of discretion in denying the new trial motion, and declining to subpoena Horn.

## II.

## A.

"This Court reviews a district court's grant or denial of a motion for new trial for abuse of discretion." *Anderson v. Ford Motor Co.*, 186 F.3d 918, 920 (8th Cir. 1999). This court "must affirm if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Wise v. Kind & Knox Gelatin, Inc.*, 429 F.3d 1188, 1190 (8th Cir. 2005).

A juror may not testify (including by affidavit) "about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." **Fed. R. Evid. 606(b)(1)**. But: "A juror may testify about whether extraneous prejudicial information was improperly brought to the jury's attention." **Fed. R. Evid. 606(b)(2)(A)**.

---

[1] The district court did not make findings of fact, but a "court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion." **Fed. R. Civ. P. 52(a)(3)**. Rule 59 (new trial motion) does not provide otherwise, although "the better practice is for the trial court to articulate its findings." *See W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Research Assocs., Inc.*, 745 F.2d 1463, 1466 n.5 (Fed. Cir. 1984).

"Extrinsic or extraneous influences include publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outside persons." *United States v. Swinton*, 75 F.3d 374, 381 (8th Cir. 1996). "In a civil case, the exposure of jurors to materials not admitted into evidence mandates a new trial only upon a showing that materials are prejudicial to the unsuccessful party." *Moore v. Am. Family Mut. Ins. Co.*, 576 F.3d 781, 787 (8th Cir. 2009). "The district court must consider relevant testimony and other evidence as to what occurred to determine 'whether there is a reasonable possibility that the communication altered the jury's verdict,' and we review the district court's decision for an abuse of discretion." *Id.*, *citing Anderson*, 186 F.3d at 920-21.

The jurors largely agreed about the jury's pre-instruction fracking discussion but disagreed about its scope. Even if the district court accepted Tranum's characterization of this discussion, the court's instruction eliminated any risk of prejudice. "It is certainly reasonable to believe, absent evidence to the contrary, that the jury adhered to the judge's instructions." *Yannacopoulos v. Gen. Dynamics Corp.*, 75 F.3d 1298, 1305 (8th Cir. 1996). In this case, there is no evidence to the contrary, as the three jurors agree that the jury did not discuss fracking after the court's instruction. *See Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("[T]he 'crucial assumption' underlying the system of trial by jury 'is that juries will follow the instructions given them by the trial judge. Were this not so, it would be pointless for a trial court to instruct a jury . . . .'"), *quoting Parker v. Randolph*, 442 U.S. 62, 73 (1979); *United States v. Brown*, 108 F.3d 863, 867 (8th Cir. 1997) ("[W]hen Brown agreed to have the court give limiting instructions to the jury, he justifiably presumed that the jury would follow the court's instructions to disregard the extrinsic evidence.").

As for the earthquake discussion, there is not a reasonable possibility that it prejudiced XTO or altered the verdict. To the extent this discussion occurred pre-

instruction, then, like the fracking discussion, there was no prejudice. Even if the district court believed the earthquake discussion occurred post-instruction, there is not a reasonable possibility of prejudice because, at most, some jurors briefly and generally discussed news reports about gas drilling and earthquakes in Arkansas (not specifically Hiser's property, or XTO).[2]

This case is not like two cases where this court approved a new trial due to juror misconduct. (XTO does not cite a case where this court reversed a denial of a new trial motion due to juror misconduct.) In *Anderson*, a juror conducted an out-of-court test of the vehicle restraint system at issue. 186 F.3d at 920. The district court found that the juror "*himself* was biased in his consideration of the issues, which therefore resulted in prejudice to" the defendant. ***Id.*** at 921. This court said the district court's findings "support a conclusion that there was 'a reasonable possibility that the communication altered [the jury's] verdict.'" ***Id.***, *quoting **Artis v. Hitachi Zosen Clearing, Inc.***, 967 F.2d 1132, 1142 (7th Cir. 1992). In the other case, where a doctor was convicted of receiving kickbacks from a home-health-care company, the district court learned that, during deliberations, two jurors said the company had been found guilty of the same crime and paid a $367 million fine. ***Brown***, 108 F.3d at 864, 865. The district court issued a limiting instruction, but jurors later revealed that, despite the instruction, the jury continued to consider the company's guilt and fine. ***Id.*** at 865-66.

The jury's conduct here is not like the prejudicial misconduct warranting new trials in *Anderson* and *Brown*. Unlike *Anderson*, there is no evidence any juror "was

___

[2]While there was no evidence about fracking at trial, one witness described the vibrations as feeling "like a small earthquake," and the plaintiff alluded in passing to earthquakes. Because the extent and nature of any vibrations was the central issue at trial, we question whether a juror's characterization of the vibrations as "earthquakes" is even admissible testimony under Rule 606(b)(1). Since that issue has not been raised by the parties, we need not address it.

biased in his [or her] consideration of the issues, which therefore resulted in prejudice" to XTO. 186 F.3d at 921. Unlike *Brown*, there is inconclusive evidence that the jurors disregarded the court's instruction. 108 F.3d at 866. Plus, the information discussed by the *Brown* jurors directly prejudiced the doctor; here, nothing ties the jurors' discussion of earthquakes to Hiser or XTO. Rather, this case is like *Moore*, where this court affirmed the denial of a new trial when a juror independently researched the defendant insurance company's financial health and informed other jurors that it "makes huge profits and can afford to pay." 576 F.3d at 787, 788. This court found that the juror's "misconduct . . . bordered on the innocuous since people know that insurance companies can generally afford to pay settlements." *Id.* at 788. Here, too, the brief and general discussions by some jurors about earthquakes borders on the innocuous.

Even assuming the jury's fracking and earthquake discussions included any extraneous matters under Rule 606(b)(2)(A), XTO has not shown a reasonable possibility that the discussions prejudiced it or altered the verdict. The district court did not abuse its discretion in denying XTO's motion for a new trial.[3]

B.

The district court's refusal to subpoena Horn is reviewed for an abuse of discretion. "The district court has broad discretion in handling allegations of juror misconduct and its decision will be affirmed absent an abuse of discretion." ***United States v. Williams***, 97 F.3d 240, 246 (8th Cir. 1996) (finding no abuse of discretion

---

[3]The Supreme Court has granted certiorari in *Warger v. Shauers*, 134 S. Ct. 1491 (2014). It addresses a question not presented here: "Whether Federal Rule of Evidence 606(b) permits a party moving for a new trial based on juror dishonesty during voir dire to introduce juror testimony about statements made during deliberations that tend to show the alleged dishonesty." Petition for Writ of Certiorari, (No. 13-517), 2013 WL 5765858.

in the court's handling of juror misconduct allegations and noting this court has "previously found unsworn juror interviews like those conducted here to be an adequate inquiry into allegations of juror misconduct"). *See also **United States v. Vig***, 167 F.3d 443, 450 (8th Cir. 1999) ("[W]e find no abuse of the district court's discretion in denying [defendant] a new trial or an evidentiary hearing" about evidence of juror misconduct.).

While XTO claims Horn's testimony is "essential to determining whether jury misconduct occurred," XTO offers minimal legal authority, relying on *Moore*, 576 F.3d at 787, and *In re Prempro Prod. Liab. Litig.*, 900 F. Supp. 2d 926, 932 (E.D. Ark. 2012).

*Moore* requires that district courts "consider relevant testimony." 576 F.3d at 787. *Moore* does not require that district courts gather *all* relevant testimony. By reviewing affidavits from three jurors, hearing testimony from two, and attempting to schedule an interview with the third, the district court satisfied its obligation under *Moore*.

In the *In re Prempro* case, the district court denied a motion for a new trial after jurors discussed a newspaper article about the case and similar cases. 900 F. Supp. 2d at 931. The court questioned each juror about any discussion of the article during deliberations. *Id.* at 931, 933. The court quoted *Moore* but did not base its decision to question each juror on *Moore*. *See id.* at 932.

The district court did not abuse its discretion by declining to subpoena Horn.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____