KNUTE OLSON, Respondent, v. GREAT NORTHERN RAIL-
WAY COMPANY, a Corporation, Appellant. .

(219 N. W. 209.)

**Common carrier — interstate commerce — employee engaged in interstate
commerce.**

1. Where an employee is engaged in working upon instrumentalities and
appliances used by a common carrier, which the latter customarily uses in-
discriminately in carrying on its interstate and intrastate commerce, such
employee is engaged in interstate commerce within the Federal Employers' Lia-
bility Act.

**Master and servant — assumption of risk and negligence held for jury.**

2. In an action for damages brought by such employee, where negligence was
predicated upon the failure of the employer to furnish a safe place in which to
work, and damages due to rheumatism and weak heart are sought to be re-
covered, the evidence is examined, and it is *held* (1) to present a question of
fact for the determination of the jury as to the failure of the defendant to
provide a reasonably safe place for the plaintiff to work, and (2) a question
of fact as to the assumption of the risk; but (3) that it is insufficient to estab-
lish that the damages resulted proximately from the negligence alleged.

**Appeal and error — sufficiency of evidence how challenged.**

3. The sufficiency of the evidence may be challenged either by a motion for
a directed verdict or by a motion for a new trial.

Opinion filed April 20, 1928.

Appeal and Error, 3 C. J. § 746 p. 839 n. 40.   Commerce, 12 C. J. § 57 p. 47 n. 37.
Master and Servant, 39 C. J. § 1266 p. 1051 n. 17; § 1333 p. 1143 n. 23; § 1363 p.
1186 n. 4.

Appeal from the District Court of Ward County, *Lowe,* J.
Reversed and new trial granted.
*Murphy & Toner,* for appellant.
*F. B. Lambert* and *Sinkler & Brekke,* for respondent.

Note.—(1) As to what employees are engaged in interstate commerce within
Federal Employer's Liability Act, see annotation in 10 A.L.R. 1184; 14 A.L.R.
732; 24 A.L.R. 634; 29 A.L.R. 1207; 49 A.L.R. 1339; 18 R. C. L. 851; 3 R. C. L.
Supp. 862; 4 R. C L. Supp. 1217; 5 R. C. L. Supp. 1007; 6 R. C. L. Supp. 1091;
7 R. C. L. Supp. 611.

JANSONIUS, Dist. J. This is an action to recover damages alleged to have been sustained by the plaintiff while employed by the defendant at its roundhouse at Berthold in this state. The case was tried to a jury, resulting in a verdict of $2,000, upon which judgment was entered. At the conclusion of the case, when both sides had rested, the defendant made separate motions for a dismissal and for a directed verdict, upon the following grounds:

First: That the plaintiff had failed to establish the material allegations of his complaint, particularly with relation to the allegation that plaintiff was engaged in interstate commerce.

Second: That it appears as a matter of law that the plaintiff did assume the risk.

Third: That the evidence does not disclose any actionable negligence committed by the defendant.

The complaint alleges negligence on the part of the defendant in failing to furnish plaintiff a reasonably fit place in which to work, in this, that the roundhouse became out of repair; that there were large holes in the roof and the doors had large openings, and no place was provided for the purpose of drying his clothes.

It is alleged that the defendant did from time to time, while plaintiff was working in said roundhouse, promise to repair same and to provide a proper shelter and to fix the doors and to arrange for proper protection of said holes in said roof and to provide a place for plaintiff to dry his clothes, but that the defendant failed and neglected to do so; that in working in said roundhouse the plaintiff was at times compelled to work in hot boilers in said roundhouse and thereupon he would and did become overheated and his clothes would become wet with perspiration and that upon coming out he would be subject to the most severe cold because of the unrepaired condition of the roundhouse; and that by reason of the negligence of the defendant in failing to provide plaintiff a safe place in which to work and by reason of its failure to carry out and fulfill its promises to repair the roundhouse, the plaintiff sustained severe and permanent injuries to his health; that he has suffered and is still suffering physical pain and has become unable to work.

Defendant answers, admitting the employment, pleads assumption of risk, and alleges that if plaintiff was injured, it was caused by the negligence and contributory negligence of plaintiff himself.

The facts may be briefly summarized as follows: Plaintiff was employed by the defendant at Berthold, North Dakota, in its roundhouse, commencing March 15th, 1916, and continuing up to and until November 25th or 26th, 1924. The first three or four years he was employed as a watchman and the last five or six years he was engine watchman and also did repairing on the engines, such as caulking the flues, adjusting the brakes and packing valves. Plaintiff's work was principally in the roundhouse. His working hours were all night. The main line of the Great Northern runs through Berthold, whence a branch line extends in a northwesterly direction. The roundhouse is maintained principally for the branch lines. It is a three stall roundhouse and there were from one to three engines in it at night. It was heated by four stoves and there was always enough coal, and it was plaintiff's duty also to fire the stoves.

The plaintiff testified that in the fall of 1923 some paper roofing, about ten by fifteen feet, blew off the roof of the roundhouse and left cracks about from a half to three-quarters of an inch wide in the roof through which the wind blew. He also testified that the doors did not fit and therefore could not be closed, leaving an opening about six inches in width. He testified that one English, the master mechanic, and Ebbinghausen, traveling engineer, were his bosses. The evidence shows that to caulk flues it was necessary for him to go into the fire box while the engine was still warm and his clothes became wet with perspiration. The engines on which the work was done were used to haul coal, grain, stock and gravel from the branch to the main line. The stock and grain on the main line were mostly taken east. Occasionally some work was done on the engines on the main line but not very often.

Plaintiff testified that he complained about the conditions of the roundhouse in the fall of 1923 to Mr. English; that the roof was repaired in the summer and blew off again, and in the fall of 1924 a piece about ten by twenty-five feet was off. He further testified that he told one Finnes in the fall of 1921 that the door and roof had to be fixed. Finnes was the boss carpenter. He testified that Finnes told him he had a crew on the branch line and when they came down they would fix it up in good shape. He testified that he also talked to English, the master mechanic, and English told him to go and see

Finnes. Afterwards he again met English who told him he would see Finnes and have it fixed. He testified that the roof and door continued to be in this condition until he quit about November 25th or 26th, 1926, and that he quit because he became sick—all in—and could not work. Most of this testimony regarding the condition of the round-house is denied by witnesses for the defendant.

It is the contention of the defendant:

First: That the plaintiff was not employed by the defendant in interstate commerce;

Second: That there was no negligence shown in failing to furnish a safe place in which to work; and,

Third: Plaintiff assumed the risk.

It is first contended by the appellant that the plaintiff was not engaged in interstate commerce and therefore is not entitled to sue under the employers' liability act. This court can take judicial notice of the fact that the Great Northern Railroad Company is engaged in both interstate and intrastate commerce. The roundhouse at Berthold was maintained principally to serve the branch line extending from that point, but it is common knowledge that the branch lines are feeders for the main line and that a large per cent of the freight coming from and going to the branch is interstate freight. The testimony shows that the engines kept in the roundhouse and repaired by the defendant were used to haul grain, stock and coal from the branch to the main line. It has repeatedly been held that when a carrier is engaged in both intrastate and interstate commerce, using the same instrumentality, appliances and employees in both classes of commerce, and the work in which the employee was engaged at the time of his injury is so closely connected with interstate commerce as to be a part thereof, it comes within the statute. It has been so held in the case of persons engaged in repairing tracks, bridges and cars used in both state and interstate commerce (Pedersen v. Delaware, L. & W. R. Co. 229 U. S. 146, 57 L. ed. 1125, 33 Sup. Ct. Rep. 648, Ann. Cas. 1914C, 153, 3 N. C. C. A. 779; Zikos v. Oregon R. & Nav. Co. (C. C.) 179 Fed. 893), the general holding being that one using or engaged in maintaining in proper condition any instrumentality or appliance used by the carrier in interstate commerce comes within the statute, although such instrumentality or appliance may also be used for intrastate busi-

ness. We therefore conclude that this action was properly within the Federal Employers' Liability Act.

It is next contended by the defendant that if plaintiff was injured he assumed the risk incidental to the employment. Assumption of risk, like contributory negligence, becomes a question of fact where there is a substantial conflict and reasonable men can draw different conclusions from the evidence. The jury accepted, and we must therefore assume, plaintiff's theory as to the condition of the roundhouse to be true. It appears from such evidence that the roundhouse became out of repair in the winter of 1923, causing plaintiff considerable inconvenience; that he complained to his superior about the condition and some repairs were made; that in the summer of 1924 part of the paper roof was again blown off, leaving cracks in the roof, and that the door would not close; that he again complained and obtained a promise that it would be repaired; that it had not been repaired and plaintiff quit on November 25th or 26th, 1924; and that when he quit he was ill.

Plaintiff alleges in his complaint and evidence was received tending to show that the roundhouse was not provided with a warm place for him to change and dry his clothes. Plaintiff alleges that the defendant from time to time promised to repair the roundhouse and to provide plaintiff with a warm place to dry and change his clothes. While the evidence does show that he complained about the condition of the roundhouse, there is no evidence whatever that he complained about having no place to change or dry his clothes or that it was customary or necessary for a flue caulker to dry or change clothes.

It is generally held if a servant, before he enters the service, knows, or if he afterwards discovers, or if by the exercise of ordinary observation or reasonable skill and diligence, having regard for his age and experience he can discover that the building or appliances are unsafe or unfit, and if, notwithstanding such knowledge or means of knowledge, he voluntarily enters into or continues in the employment without objection or complaint, he is deemed to assume the risk of the danger thus known or discovered, and to waive any claim for damages against the master in case it shall result in injury to him. But if the servant complains to the master or a representative of the master of the danger, and receives a promise that the same will be repaired, the

servant will be excused for remaining in the service a reasonable time thereafter to await such reparation, and will not be deemed to accept the risk, unless the danger is so obvious, imminent or glaring that a reasonably prudent man would not, even after such promise, encounter it by continuing in the services, and under such circumstances he will not as a matter of law be put in the position of having assumed the risk, but whether he has done so will be a question for the jury; also, what is a reasonable time is ordinarily a question for the jury.

Negligence in cases of this character must be established as a foundation of legal responsibility. Negligence is predicated on duty and presupposes the omission to fulfil the obligation imposed. This duty is imposed either by statute or by rule of common law. It may be owing to an individual or to the public generally, but he who seeks damages for an injury sustained must predicate and prove that the damage arose through the commission or omission of a person charged with a duty. Three essential elements are involved in every case of actionable negligence: First, the existence of a duty on the part of the defendant; second, a failure by the defendant to perform that duty; and, third, an injury proximately resulting to plaintiff from such failure. The evidence in this case is not very satisfactory, but it is our opinion the question of negligence with reference to the roundhouse is for the jury. The more serious question is as to whether or not the sickness was proximately caused by the negligence of the defendant in not furnishing plaintiff a reasonably safe place to work so as to make the negligence actionable. This case is complicated by the allegation in the complaint that the injury was caused by reason of the carelessness of the defendant in not providing a warm place for the plaintiff to dry and change his clothes. The evidence shows that the plaintiff had caulked flues for many years; and that he was familiar with this kind of work and the conditions under which such work had to be done.

Doctor Erenfeld testified that Olson when examined by him was suffering from heart trouble and rheumatism and that the weakened heart probably resulted from the rheumatism. The all important question in the case, therefore, is whether or not the sickness complained of was caused by the negligence of the defendant in not repairing the building when its attention was called to the condition it was in. Rheumatism is contracted by thousands of persons in all vocations

every year. Caulking flues of itself is a hazardous work so far as this particular disease is concerned. Olson testified he was fifty-seven years of age and had worked with engines many years.

Under the Federal Employers' Liability Act the defendant is not an insurer of the safety or health of its employees. Unless the defendant was negligent and such negligence caused the injury, it cannot be held liable in this case simply because plaintiff contracted a disease. To justify a verdict the injuries must have resulted from the negligence of the defendant in failing to furnish a reasonably safe place for plaintiff to work and not from the hazard of exposure due to caulking flues. The testimony of the plaintiff or Doctor Erenfeld throws no light upon the all important question as to what caused the sickness. In answer to the hypothetical question:

"Q. If it was developed that his work was working with engines and these engines were in a cold room, roundhouse where it was cold, ice around and a lot of steam, and his work was to get into the fire box where it was very hot and stay there as long as he could and then come out into a cold room and without protection and wearing the same clothes and continuing to work there until he got cooled off and go back in again, and that continued nightly, would that in your opinion have any tendency to make him sick such as you said he was? A. I think so."

"Q. If you knew that to be the case, and found him in the condition he was in right afterwards, in your judgment it would be the cause or one of the causes? And this had continued for a couple of years? A. I believe so."

Taking the testimony of the doctor and the record as a whole, it is impossible for anyone to say what caused plaintiff's sickness. It may have resulted from his work as a flue caulker, extending as it did over many years, or it may have been brought about from exposure in the roundhouse, or both may have contributed to the injury, or his rheumatism may have been the result of his age or natural causes. To sustain a verdict in this case the evidence must show that plaintiff's sickness was caused by the negligence of the defendant in not furnishing him a reasonably safe place to work.

If this case came within the Workmen's Compensation Act, it would be sufficient to show that the plaintiff was injured in the course of his

employment and unquestionably it would be better for the employee in any line to be insured against injury and sickness while employed, regardless of the cause, but we are not dealing with that situation here. Plaintiff is not claiming damages simply because he became sick while employed. His right is founded upon negligence on the part of the defendant.

It is contended on the part of the plaintiff that the question of the sufficiency of the evidence to establish actionable negligence was not raised in the court below. The question of the sufficiency of the evidence may be raised either by motion for a new trial or by motion for a directed verdict. Morris v. Minneapolis, St. P. & S. Ste. M. R. Co. 32 N. D. 366, 155 N. W. 861; Horton v. Wright, B. & S. Co. 43 N. D. 114, 174 N. W. 67; Bailey v. Davis, 49 N. D. 838, 193 N. W. 658; Rokusek v. National Union F. Ins. Co. 50 N. D. 123, 195 N. W. 300; Fargo Loan Agency v. Larson, 53 N. D. 621, 207 N. W. 1003. In this case there was no motion for a new trial, but there was a motion on the part of the defendant at the close of all the evidence for a directed verdict. This motion specifically challenged the sufficiency of the evidence to establish actionable negligence. The plaintiff asserts that the motion did not raise the question of proximate cause. The alleged grounds of the insufficiency of the evidence need not be specified in a motion for a directed verdict with the same particularity that is required in a motion for a new trial; it is enough that the insufficiency is pointed out in general terms. As indicated above, actionable negligence includes the element of proximate cause; that is, negligence is actionable only when the acts of negligence are the proximate cause of the injuries complained of. Error is predicated on the denial of the motion for a directed verdict and we are of the opinion that this assignment must be supported.

Taking the record as a whole we are constrained to hold that a new trial must be had. On a new trial the issues should be narrowed to: The question of the cause of the sickness; the extent thereof; whether or not he assumed the risk, and if not, whether the defendant was negligent in not providing a reasonably safe place for plaintiff to work. In view of the fact that rheumatism and a weak heart result from many causes, this case differs materially from a case where an employee sustains a physical injury. In such case the cause is very easily de-

terminable. In a case such as this, even where the evidence is clear, it is difficult to determine as to just what caused the sickness. The testimony of the plaintiff's physician is so inconclusive as to be of little assistance. His answers to the hypothetical questions propounded by the attorney for the plaintiff are "I think so" or "I believe so." As the record now stands, it goes no further than to show that plaintiff became sick while employed and leaves the cause of his sickness entirely a matter of speculation.

For reasons stated above, the verdict will be set aside and a new trial granted. It is so ordered.

NUESSLE, Ch. J., and BURKE, CHRISTIANSON, and BIRDZELL, JJ., concur.

BURR, J., did not participate; Honorable FRED JANSONIUS, Judge of the Fourth Judicial District, sitting in his stead.