2009 ND 213

**MINTO GRAIN, LLC, a North Dakota limited liability company, and William Slominski and Katherine Slominski, individually, and as sole shareholders of Minto Grain, LLC, Plaintiffs and Appellees**

v.

**Mark L. TIBERT, Melvin J. Tibert, Sue Votava Tibert aka Suzi Tibert, William "Bill" Tibert, Defendants and Appellants.**

No. 20080300.

Supreme Court of North Dakota.

Dec. 17, 2009.

See also 720 N.W.2d 921; 692 N.W.2d 133; 682 N.W.2d 294; 681 N.W.2d 70; 679 N.W.2d 440; 646 N.W.2d 719.

Zenas Baer, Hawley, MN, for plaintiffs and appellees.

David C. Thompson, Grand Forks, ND, for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1]  Mark Tibert, Melvin Tibert, Suzi Tibert, and William "Bill" Tibert ("Tiberts") appealed from a district court judgment entered after a jury verdict in favor of Minto Grain, LLC, William Slominski, and Katherine Slominski (collectively "Minto Grain") and against Tiberts jointly and severally in the amount of $455,000. Judgment against William "Bill" Tibert was limited to $305,000.  We conclude the court did not err in denying Tiberts' post-trial motions for judgment as a matter of law and for a new trial, and we affirm.

I

[¶ 2]  The parties acknowledge that Minto Grain and the Tiberts have been engaged in extensive litigation over the years, relating to expansion of a roadway known as "Kilowatt Drive" and boundary disputes.  See Tibert v. City of Minto, 2006 ND 189, 720 N.W.2d 921;  Tibert v. Slominski, 2005 ND 34, 692 N.W.2d 133;  Tibert v. Minto Grain, LLC, 2004 ND 133, 682 N.W.2d 294;  Minto Grain, LLC v. Tibert, 2004 ND 107, 681 N.W.2d 70;  Tibert v. City of Minto, 2004 ND 97, 679 N.W.2d 440;  see also Nowling v. BNSF Ry., 2002 ND 104, 646 N.W.2d 719.  Melvin Tibert, Cathy Tibert, Mark Tibert, and Suzi Tibert own homes on neighboring lots in Minto, North Dakota, and purchased their homes in 1987.  Slominski, 2005 ND 34, ¶ 2, 692 N.W.2d 133.  Minto Grain owns and operates a grain elevator on property adjacent to the Tiberts.  Id.

[¶ 3]  In 1999, Minto Grain was formed by William Slominski and Katherine Slominski to purchase, expand, and operate the Minto Farmers Elevator, intending to

expand the facility to a 110–car unit train load-out facility. William Slominski and Katherine Slominski are the only members of Minto Grain and subsequently purchased the elevator, which had been in operation since 1881 under various owners and names. Although disputed by Tiberts at trial, Minto Grain asserts it contracted with Burlington Northern Santa Fe ("BNSF") to assist in financing the unit train load-out facility. Further, Minto Grain obtained title through a quit-claim deed to a portion of BNSF's right-of-way in 2001 to facilitate the expansion of the facilities. Tiberts objected to the expansion of the Minto elevator and the use of the right-of-way which Minto Grain had acquired from BNSF.

[¶ 4] In 2004, Minto Grain commenced this action against the Tiberts, alleging various claims arising from the Tiberts' efforts to prevent the expansion of Minto Grain's facility to a 110–railcar load-out facility. Minto Grain's claims against the Tiberts included civil conspiracy, wrongful interference with business, tortious interference with contract, nuisance, trespass, and abuse of process. In December 2007, the district court granted partial summary judgment to Tiberts, dismissing Minto Grain's claims of civil conspiracy and abuse of process. In January 2008, the district court conducted a three-week jury trial on Minto Grain's remaining claims against Tiberts for wrongful interference with business, tortious interference with contract, nuisance, and trespass.

[¶ 5] In January 2008, the jury returned a special verdict in favor of Minto Grain, holding Tiberts jointly and severally liable for damages in the amount of $455,000, but limiting damages against William Tibert to $305,000. In March 2008, judgment was entered in favor of Minto Grain and against the Tiberts. In April 2008, Tiberts filed a "consolidated motion" on behalf of all defendants for a judgment of dismissal as a matter of law under N.D.R.Civ.P. 50(b)(1)(C). Additionally, William Tibert filed an additional "separate motion" for a judgment of dismissal as a matter of law under N.D.R.Civ.P. 50(b)(1)(C). In May 2008, Tiberts filed a "consolidated motion" for a new trial under N.D.R.Civ.P. 59(b)(2), raising a single claim of jury misconduct.

[¶ 6] In November 2008, the district court denied Tiberts' motion for new trial based on juror misconduct and denied Tiberts' renewed motions for judgment as a matter of law. After the court's denial of Tiberts' post-trial motions under N.D.R.Civ.P. 50(b)(1)(C) and N.D.R.Civ.P. 59(b)(2), Tiberts took this appeal from the district court's final judgment.

## II. Standards of Review

[¶ 7] This Court has explained the standard of review for a motion for judgment as a matter of law under N.D.R.Civ.P. 50:

> The trial court's decision on a motion brought under N.D.R.Civ.P. 50 to deny or grant judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. In considering this motion, the trial court must apply a rigorous standard with a view toward preserving a jury verdict, and so must we in our review on appeal. In determining if the evidence is sufficient to create an issue of fact, the trial court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence which support the verdict. The trial court's decision on

a motion for judgment as a matter of law is fully reviewable on appeal.

*Amyotte ex rel. Amyotte v. Rolette County Hous. Auth.*, 2003 ND 48, ¶ 15, 658 N.W.2d 324 (quoting *Symington v. Mayo*, 1999 ND 48, ¶ 4, 590 N.W.2d 450 (citations omitted)); *see also Anderson v. Kroh*, 301 N.W.2d 359, 362 (N.D.1980).

In reviewing a district court ruling on a motion for judgment as a matter of law, we examine the sufficiency of the evidence by viewing the evidence supporting the jury verdict as the truth. This Court then applies the standard for a Rule 50 judgment as a matter of law, which is whether the evidence favoring the verdict is so insufficient, reasonable minds could reach only one conclusion as to the verdict.

*Amyotte ex rel. Amyotte v. Rolette County Hous. Auth.*, 2003 ND 48, ¶ 15, 658 N.W.2d 324 (citation omitted).

[¶ 8] Under N.D.R.Civ.P. 50(b), if the district court does not grant a motion for judgment as a matter of law at the close of all evidence, the court may later decide the legal questions raised by the motion. The term "judgment as a matter of law" in N.D.R.Civ.P. 50 has replaced the terms "directed verdict" and "judgment notwithstanding the verdict." *See id.*, Explanatory Note. "The standard for determining whether judgment as a matter of law should be granted is the same as that for a directed verdict or judgment notwithstanding the verdict." *Wagner v. Squibb*, 2003 ND 18, ¶ 4, 656 N.W.2d 674. On appeal the district court's decision on a motion for judgment as a matter of law is fully reviewable. *Wagner*, at ¶ 3; *Howes v. Kelly Servs., Inc.*, 2002 ND 131, ¶ 7, 649 N.W.2d 218. To determine whether the district court erred in granting a motion for judgment as a matter of law under N.D.R.Civ.P. 50(b), this Court examines the trial record and applies the "same standard" as the district court was required to apply initially. *See Okken v. Okken*, 325 N.W.2d 264, 267 (N.D.1982); *Riebe v. Riebe*, 252 N.W.2d 175, 177 (N.D. 1977).

[¶ 9] We note that some decisions of this Court have also suggested that a motion for judgment notwithstanding the verdict, now judgment as a matter of law under N.D.R.Civ.P. 50(b), is committed to the district court's sound discretion and is reviewed on appeal for an abuse of discretion. *See, e.g., Forster v. West Dakota Veterinary Clinic, Inc.*, 2004 ND 207, ¶ 17, 689 N.W.2d 366; *Diversified Fin. Sys. Inc. v. Binstock*, 1998 ND 61, ¶ 10, 575 N.W.2d 677; *Suburban Sales & Service, Inc. v. White*, 326 N.W.2d 873, 877 (N.D.1982); *Falkenstein v. City of Bismarck*, 268 N.W.2d 787, 790 (N.D.1978). However, the proper standard of review has been discussed in 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 3d* § 2536 (2008):

In determining whether a motion for a judgment as a matter of law should have been granted, an appellate court applies the same standard under Rule 50(b) as does the trial court in passing on the motion originally made under Rule 50(a). This same-standard principle is an important one and is reflected in innumerable cases. . . .

One court of appeals takes the view that it will not superimpose its judgment on that of the trial court unless it can say that the judge's judgment was "clearly wrong." This is not the proper test. Whether judgment as a matter of law should be granted is a question of law and on questions of that character authority in every federal circuit has pronounced that the litigants are entitled to full review by the appellate court without special deference to the views of the trial court. Thus, a massive amount

of case authority ... makes it clear that the court of appeals reviews the trial court's ruling on a Rule 50 motion for judgment as a matter of law de novo.

[¶ 10] In *Falkenstein*, 268 N.W.2d at 790, this Court's analysis appears to combine the standards of review for a motion for judgment notwithstanding the verdict and a motion for new trial, collectively stating both motions are directed to the trial court's sound discretion, and only overturning "unless it is clear that there was a manifest abuse of discretion." The analysis in *Falkenstein* merged the separate analyses for the motion for judgment notwithstanding the verdict and the motion for new trial and misstated this Court's decision in *Dehn v. Otter Tail Power Co.*, 251 N.W.2d 404, 410–11 (N.D.1977), which was cited by *Falkenstein*, at 790.

[¶ 11] The proper standards of review for each of the motions was articulated in *Okken*, 325 N.W.2d at 267–69, in which this Court stated that to determine whether the trial court erred in granting a motion for judgment notwithstanding the verdict, this Court examines the trial record and applies "the same standard that the trial court was required to apply initially." To the extent prior cases have suggested that a motion for judgment notwithstanding the verdict, now judgment as a matter of law under N.D.R.Civ.P. 50(b), is committed to the district court's sound discretion and reviewed for an abuse of discretion, we now clarify that this Court applies the "same standard" as the district court initially applied. *See Forster*, 2004 ND 207, ¶ 17, 689 N.W.2d 366; *Binstock*, 1998 ND 61, ¶ 10, 575 N.W.2d 677; *Suburban Sales & Service, Inc.*, 326 N.W.2d at 877; *Falkenstein*, 268 N.W.2d at 790.

[¶ 12] Motions for new trial in civil cases, on the other hand, are governed by N.D.R.Civ.P. 59. Under N.D.R.Civ.P. 59(b)(2), a party may move for a new trial based upon "[m]isconduct of the jury, and whenever any juror has been induced to assent to any general or special verdict or to a finding on any question submitted to the jurors by the court by a resort to the determination of chance, the misconduct may be proved by the affidavit of any one of the jurors."

[¶ 13] This Court will not reverse a district court's denial of a new trial motion based on the grounds of juror misconduct unless the court abused its discretion. *See State v. Hidanovic*, 2008 ND 66, ¶ 11, 747 N.W.2d 463; *State v. Brooks*, 520 N.W.2d 796, 798 (N.D.1994); *Keyes v. Amundson*, 343 N.W.2d 78, 81 (N.D.1983). A district court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 34, 680 N.W.2d 634.

### III. Preservation of Issues

[¶ 14] Tiberts argue the district court erred in denying their motion for a new trial under N.D.R.Civ.P. 59 on the basis of jury misconduct and in denying their alternative request for an evidentiary hearing. They also argue the district court committed reversible error in denying their original and "renewed" motions for judgment of dismissal as a matter of law under N.D.R.Civ.P. 50, asserting Minto Grain failed to present evidence at trial to support claims of tortious interference with business and failed to present sufficient evidence at trial to support claims of tortious interference with contractual relations. Tiberts argue the district court committed "independent" reversible error by admitting an exhibit entitled "prior litigation summaries" and by denying the admission of actual court documents offered by Tiberts. Tiberts assert the court erred

by failing to grant their motion for judgment of dismissal as a matter of law on grounds of "petition immunity," thereby permitting the jury to assign liability to Tiberts in violation of the petition immunity, and that Minto Grain failed to present competent evidence that any action by William Tibert proximately caused any financial injury or damage to Minto Grain.

[¶ 15] Minto Grain responds that the scope of review on appeal is limited based on Tiberts' new trial motions, that the district court did not abuse its discretion in denying Tiberts' motions for a judgment as a matter of law, and that the court did not abuse its discretion in denying Tiberts' motion to grant a new trial on the basis of juror misconduct.

[¶ 16] Tiberts made their motion for new trial under N.D.R.Civ.P. 59(b)(2), in which they only argued juror misconduct. In *Andrews v. O'Hearn*, 387 N.W.2d 716, 728 (N.D.1986), this Court explained:

> "It is well settled that where a motion for a new trial is made in the lower court the party making such a motion is limited on appeal to a review of the grounds presented to the trial court." *Zimbelman v. Lah*, 61 N.D. 65, 67, 237 N.W. 207, 208 (1931). This restriction of appealable issues applies not only to review of a denial of the motion for a new trial, *but also to the review of the appeal from the judgment itself or from a denial of a motion for judgment notwithstanding the verdict . . . .*

(Footnote omitted and emphasis added.) *See also State v. Zajac*, 2009 ND 119, ¶ 8, 767 N.W.2d 825 (holding defendant failed to preserve issues relating to jury instructions and improper closing argument not raised in defendant's new trial motion); *Dewey v. Lutz*, 462 N.W.2d 435, 439 (N.D. 1990) (concluding appellants waived issue on appeal that trial court abused its discretion in permitting complaint to be amended during trial to allege a claim for deceit, which appellants failed to raise in their motion for judgment notwithstanding the verdict and alternative motion for new trial).

[¶ 17] This Court has also stated that in challenging a district court's evidentiary rulings, a party is not required to make a new trial motion prior to taking an appeal from the judgment, but when a party makes a new trial motion, that party is limited on appeal to those issues raised in the motion for new trial. *Swiontek v. Ryder Truck Rental, Inc.*, 432 N.W.2d 893, 895–96 (N.D.1988) (citing *Nelson v. Trinity Medical Center*, 419 N.W.2d 886, 889 (N.D.1988); *Andrews*, 387 N.W.2d at 729); *see also State v. Kopp*, 419 N.W.2d 169, 172–73 n. 2 (N.D.1988) ("An assertion that the verdict is contrary to the greater weight of the evidence cannot, of course, be raised during the course of the trial. Although such an issue can be raised on appeal from the judgment without making a motion for new trial, where, as here, a motion for new trial was made, the issue must be raised in that motion or it will not be considered on appeal.").

[¶ 18] Here, the Tiberts filed three post-trial motions for disposition by the district court. On April 7, 2008, the Tiberts filed a "consolidated motion" by all the defendants for judgment of dismissal as a matter of law under Rule 50(b)(1)(C), N.D.R.Civ.P., and a "separate motion" by William Tibert for judgment of dismissal as a matter of law under Rule 50(b)(1)(C), N.D.R.Civ.P. On May 16, 2008, Tiberts filed a "consolidated motion" by all defendants for a new trial under Rule 59(b)(2) on the basis of jury misconduct.

[¶ 19] In both the consolidated and separate motions under N.D.R.Civ.P. 50(b)(1)(C), the defendants sought judgment as a matter of law "providing for the *dismissal* of all claims" against the various

defendants. (Emphasis in original.) In their brief supporting the "consolidated motion" under N.D.R.Civ.P. 50(b)(1)(C), Tiberts stated: "Specifically, the instant motion is a *renewal* of the Rule 50 motions which were made at trial on behalf of all defendants, with this post-trial motion being made pursuant to Rule 50(b)(1)(C), N.D.R.Civ.P." (Emphasis in original.) The Tiberts' brief supporting the "consolidated motion" further stated:

> All of the above-captioned defendants hereby reiterate, and incorporate herein by reference, and reassert, pursuant to Rule 50(b)(1)(C), N.D.R.Civ.P., all Rule 50 JAMAL motions which were made at trial, and placed into the trial record by the undersigned counsel for the defendants, both at the conclusion of the plaintiffs' case-in-chief, and also at the conclusion of all of the presentation of all evidence, prior to the submission of the case to the jury.

(Emphasis in original.) However, the Tiberts' brief addressed only one issue, arguing that no "concert of actions" claims should have been presented to the jury because the district court's summary judgment dismissal of Minto Grain's conspiracy claims also terminated Minto Grain's claims for "concert of action" against Tiberts. No other arguments were specifically raised or briefed. Further, in a footnote to the Tiberts' brief supporting the "consolidated motion," they stated, "In addition, as is provided for by Rule 50(b), a movant under Rule 50(b) may alternatively request a new trial … under Rule 59, N.D.R.Civ.P. While the defendants hereby do alternatively request a new trial under the grounds set forth herein, these defendants do hereby inform the Court that a subsequent motion for a new trial *will be* timely filed and served pursuant to Rule 59, N.D.R.Civ.P., upon the grounds set forth herein, and upon additional grounds as well." (Emphasis added.)

[¶ 20] Likewise, the Tiberts' brief supporting the "separate motion" of William Tibert under N.D.R.Civ.P. 50(b)(1)(C) stated, "Specifically, the instant motion is a *renewal* of the Rule 50 motions which were made at trial on behalf of defendant William 'Bill' Tibert, and all other defendants, with this post-trial motion being made pursuant to Rule 50(b)(1)(C), N.D.R.Civ.P." (Emphasis in original.) The brief also states, "Parenthetically, defendant William 'Bill' Tibert does hereby incorporate by reference all of the features of all of the Rule 50 motions which were orally placed upon the trial record by counsel for the defendants after the presentation by the plaintiffs of their case-in-chief, and then again after all evidence had been placed into the record, prior to submission of the case to the jury."

[¶ 21] In his separate brief, however, William Tibert raised several issues, seeking dismissal of Minto Grain's wrongful interference with business claim, intentional interference with contract claim, and nuisance claim against him and asserting no evidence was presented at trial to support these claims. William Tibert also argued there was no evidence his actions were the proximate cause of any of the damages awarded to Minto Grain against him and there was no evidence he had acted in concert with any of the other defendants. William Tibert also asserted no "concert of action" claims should have been presented to the jury. Additionally, in a footnote, William Tibert's brief stated:

> In addition, as is provided for by Rule 50(b), a movant under Rule 50(b) may alternatively request a new trial … under Rule 59, N.D.R.Civ.P. While defendant William 'Bill' Tibert hereby does alternatively request a new trial under the grounds set forth herein, this defendant does hereby inform the Court that

a subsequent motion for a new trial *will be* timely filed and served pursuant to Rule 59, N.D.R.Civ.P., upon the grounds set forth herein, and upon additional grounds as well.

(Emphasis added.)

[¶ 22] When the Tiberts ultimately filed their "consolidated motion" for a new trial, however, they only asked the district court to grant a new trial on the grounds of jury misconduct under N.D.R.Civ.P. 59(b)(2). The only issue raised and argued in their brief supporting the new trial motion was that jury misconduct warranted a new trial or that the district court should conduct an evidentiary hearing on jury misconduct. In a footnote, the Tiberts' brief states: "In addition, as is a matter of record, a consolidated motion for judgment as a matter of law under Rule 50(b), N.D.R.Civ.P. has been made on behalf of all defendants, and a separate Rule 50(b) JAMAL motion has been filed on behalf of individual defendant William Tibert.... As is provided for by Rule 50(b), a movant under Rule 50(b) *may* alternatively request a new trial ... under Rule 59, N.D.R.Civ.P." (Emphasis added.)

[¶ 23] Although Tiberts' memorandum in support of their motions for judgment as a matter of law suggest that an alternative new trial motion "will be filed," the Tiberts' actual new trial motion was based only on jury misconduct and no other issues were raised or alleged in the Tiberts' motion and brief for a new trial. Specifically, Tiberts did not make an alternate new trial motion under N.D.R.Civ.P. 59(b)(6), challenging the sufficiency of the evidence.

■ [¶ 24] Motions, including post-trial motions under N.D.R.Civ.P. 50(b) and 59, are subject to N.D.R.Civ.P. 7(b)(1), which requires the grounds for the motion be stated with "particularity." Specifically, N.D.R.Civ.P. 7(b)(1) states:

An application to the court for an order shall be by motion which, *unless made during a hearing or trial,* shall be made in writing, shall state with particularity the grounds therefore, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

(Emphasis added.) "The particularity requirement codified in Rule 7(b)(1) has long been a part of North Dakota law." *Schaan v. Magic City Beverage Co.,* 2000 ND 71, ¶ 12, 609 N.W.2d 82 (citing *Olson v. Great Northern Ry. Co.,* 56 N.D. 690, 219 N.W. 209 (1928)).

[¶ 25] In *Schaan,* we explained three policy grounds supporting this particularity requirement:

(1) it spares the court a search of the record and directs the court's attention to possible faults; (2) it advises opposing counsel so [counsel] may prepare and adequately contest the motion; and (3) it provides an adequate record for appellate review.

*Schaan,* at ¶ 12 (citing *Fowler v. Delzer,* 177 N.W.2d 756, 762 (N.D.1970); *Sullwold v. Hoger,* 110 N.W.2d 457, 459 (N.D.1961)). In *Sullwold,* 110 N.W.2d at 459, this Court explained that the requirement that grounds be specified should not be a "technical obstacle" to a moving party seeking justice, but instead is a "procedural safeguard." We have repeatedly held that "specified grounds" means something more than stating generalities. *See Schaan,* at ¶ 13; *Porter v. Porter,* 274 N.W.2d 235, 242 (N.D.1979); *Fowler,* 177 N.W.2d at 762. In *Schaan,* at ¶ 13 (quoting *Porter,* 274 N.W.2d at 242) this Court stated:

[i]t is not the duty of the trial court on a motion for a new trial to search the record to determine whether or not the

evidence is sufficient to sustain a finding. The party making the motion must point out where the evidence is insufficient. (Citation omitted.) The mere assertion that a mistake was made in a particular finding does not meet the specificity requirement.

[¶ 26] In addition to N.D.R.Civ.P. 7(b)(1), which requires that motions, not made during hearing or trial, be in writing and state with particularity the grounds and the order sought, N.D.R.Ct. 3.2(a)(2) states that "[u]pon serving and filing a motion, the moving party shall serve and file a brief and other supporting papers and the adverse party shall have ten days after service of a brief within which to serve and file an answer brief and other supporting papers." Under N.D.R.Ct. 3.2(c), a "[f]ailure to file a brief by the moving party may be deemed an admission that, in the opinion of party or counsel, the motion is without merit."

■ [¶ 27] Our rules do not encourage and condone parties relying extensively on arguments "incorporated by reference" or attempting to make "alternate motions" in footnotes. We have often said that judges "are not ferrets" who "engage in unassisted searches of the record for evidence to support a litigant's position." *Coughlin Constr. Co., Inc. v. Nu–Tec, Indus.*, 2008 ND 163, ¶ 9, 755 N.W.2d 867; *see Buchholz v. Barnes County Water Bd.*, 2008 ND 158, ¶ 16, 755 N.W.2d 472; *State v. Noack*, 2007 ND 82, ¶ 8, 732 N.W.2d 389; *Eberhardt v. Eberhardt*, 2003 ND 199, ¶ 17, 672 N.W.2d 659; *Earnest v. Garcia*, 1999 ND 196, ¶ 10, 601 N.W.2d 260. *See also Holden v. Holden*, 2007 ND 29, ¶ 7, 728 N.W.2d 312 ("We have repeatedly stated we are not ferrets and we 'will not consider an argument that is not adequately articulated, supported, and briefed.' ").

[¶ 28] In *Moore v. American Family Mut. Ins. Co.*, 576 F.3d 781, 784–86 (8th Cir.2009), the Eighth Circuit Court of Appeals concluded American Family had failed to preserve for review the contention that it was entitled to judgment as a matter of law on the Moores' bad faith claim. In that case American Family originally raised the bad faith issue and two other matters in an oral motion for a judgment as a matter of law after the plaintiffs had rested their case, which the district court denied, and American Family had orally renewed the motion at the close of evidence. *Id.* at 785. After the jury had returned a verdict in the Moores' favor, American Family filed a post-trial motion under Rule 50(b), in part stating that it was " 'renew[ing] the motions for JAML that [it] made, raised and asserted during the trial of this action' " but American Family did not specify the grounds for granting JAML. *Id.*

[¶ 29] The Court of Appeals also observed that although American Family filed a forty-page memorandum listing over 20 grounds for relief, including one of the grounds raised in its oral Rule 50(a) motion, "nothing in the supporting memorandum indicated that American Family was renewing its request for judgment as a matter of law on the bad faith claim." *Id.* In denying American Family's post-trial motion, the district court addressed each ground American Family raised in its memorandum, but did not rule on whether the evidence supported the bad faith claim, which the Court of Appeals stated was most likely because the district court did not think it was being asked to rule on that issue. *Id.* The Court of Appeals concluded that American Family's Rule 50(b) motion did not preserve the bad faith issue for review:

Federal Rule of Civil Procedure 7(b)(1) requires that all motions "state with particularity the grounds for seeking [an] order," and we think therefore that

American Family did not effectively make a Rule 50(b) motion on this ground. Where a party fails to make a Rule 50(b) motion in the district court regarding an issue, there is nothing for the court of appeals to review, and we thus lack the power to review the matter. *See E.E.O.C. v. Southwestern Bell Tel. Co.,* 550 F.3d 704, 708 (8th Cir. 2008).

We note, moreover, that Local Rule 7.1 further provides that "[a] moving party's failure to serve and file a memorandum in support may be deemed an admission that the motion is without merit." N.D.Civ.R. [sic] 7.1. Similarly, we generally deem an issue waived if an appellant's brief does not include an argument addressing that issue, and we have explained this rule promotes "proper judicial administration." *See, e.g., Jenkins v. Winter,* 540 F.3d 742, 751 (8th Cir.2008) (internal quotation marks and citations omitted); *see also* Fed. R.App.P. 28(a)(9). As we have already said, American Family did not even assert in its memorandum that it was entitled to JAML on the bad-faith claim, much less provide an argument supporting that assertion. We therefore do not believe that the district court, even if it had the discretion to do so, was obligated to treat the issue as having been raised, and we therefore do not see how the court could have erred by not entering judgment for American Family on the Moores' bad faith claim.

*American Family,* 576 F.3d at 785.

[¶ 30] The Court of Appeals also refused to address whether the question of punitive damages should have been submitted to the jury. Although American Family objected to the sufficiency of the evidence on the issue of punitive damages in its Rule 50(a) motion, American Family did not raise the issue in its written Rule

50(b) motion, and the Court of Appeals concluded the issue was not preserved for appellate review. *Id.* at 789–90.

[¶ 31] We note that our Rule 7(b)(1), N.D.R.Civ.P., is based on F.R.Civ.P. 7(b)(1), both of which do not require motions made during a hearing or trial to be in writing. Nonetheless, once a trial is over and post-trial motions are submitted, both our rule and the federal rule require that the motion be made in writing, state the grounds for the motion with particularity, and set forth the relief or order sought. We agree with the *American Family* standard, and with this framework in mind, we consider the various issues raised by the Tiberts on appeal in the context of how those were raised in the district court.

### IV. Motion for New Trial under N.D.R.Civ.P. 59(b)(2)

[¶ 32] Tiberts argue the district court erred in denying their motion for a new trial on the basis of jury misconduct under N.D.R.Civ.P. 59(b)(2), and in denying their alternative request for an evidentiary hearing on the allegations of jury misconduct.

[¶ 33] We will not reverse a district court's denial of a new trial motion on the grounds of jury misconduct absent an abuse of discretion. *See Hidanovic,* 2008 ND 66, ¶ 11, 747 N.W.2d 463; *Kerzmann v. Rohweder,* 321 N.W.2d 84, 86–87 (N.D.1982); *Keyes,* 343 N.W.2d at 81. In deciding whether to grant a new trial based on jury misconduct, the district court must decide: (1) whether there was misconduct and, if so, (2) whether the misconduct could have affected the verdict of a hypothetical average juror. *Hidanovic,* 2008 ND 66, ¶ 12, 747 N.W.2d 463; *Keyes,* 343 N.W.2d at 85. In *Hidanovic,* at ¶ 13, we explained:

Rule 606(b), N.D.R.Ev., generally prohibits a juror from testifying about matters or statements occurring during the course of the jury's deliberations. Under N.D.R.Ev. 606(b), however, "jurors may testify regarding the receipt of extraneous prejudicial information by the jury or improper outside influence, but they may *not* testify to its subjective effect on the verdict or on their individual deliberations." *Keyes*, 343 N.W.2d at 85. "An attempt to use juror affidavits to demonstrate how the jury arrived at its decision falls precisely within the confines of the rule prohibiting impeachment of the jury verdict." *Andrews v. O'Hearn*, 387 N.W.2d 716, 719 (N.D. 1986). The purpose of N.D.R.Ev. 606(b) is to preserve the finality of verdicts, to protect the privacy and integrity of jury deliberations, and to prevent jury harassment and maintain public confidence in the jury system. *Brooks*, 520 N.W.2d at 799; *Andrews*, at 719–20. Rule 606(b), N.D.R.Ev., embodies a balance between the desire for finality and certainty on one hand and the need to achieve an acceptable level of fairness and accuracy on the other hand, and if a verdict is the result of extraneous prejudicial information or outside influence, the balance favors fairness and accuracy. *Brooks*, at 799.

[¶ 34] In their new trial motion under N.D.R.Civ.P. 59(b)(2), Tiberts alleged wrongful discussions that occurred before and during deliberations demonstrated prejudice against them by juror Linda Gillespie and other jurors. After the jury had returned its verdict, the district court received a letter from Gerald Mell, one of the jurors in the case, stating that he was convinced the defendants "did not have a very impartial jury" and that he "found out after it was all over that Linda Gilespie [sic] could very easily have set [sic] on our jury for vengfull [sic] reasons."

The court mailed copies of Mell's letter to the attorneys telling them it would be up to them to determine what, if any, further steps they would wish to take regarding the comments. Tiberts' subsequent new trial motion was supported by an affidavit from Mark Wilson, an alternate juror, and an affidavit from Alfred Narro, a juror in the case, and by Mell's letter.

[¶ 35] Here, the district court said the Tiberts' motion for new trial made no allegations that the verdict was arrived at by chance or that there was a mistake in entering the verdict on the special verdict form. The district court also said the jurors were polled after the verdict was read in court and affirmed that the verdict was their true and correct verdict. In denying the Tiberts' new trial motion, the district court ruled:

Wilson, the alternate juror, in his affidavit [at] paragraph 4 states: "That during the course of the three weeks of trial in this case, I came to hear juror Linda Gillespie to specifically say to other members of the jury—on multiple occasions—that the Tibert defendants were 'like the Mafia', that the Tiberts were dangerous, that the Tiberts were to be feared, that the Tiberts had 'plenty of money', and that the Tiberts can and should 'pay' in the case." Wilson continued on in his affidavit and states that other female jurors increasingly made similar statements about the Tibert defendants and the Tibert family and that Gillespie and other female jurors also made comments in the jury room about pieces of evidence, commenting negatively about this evidence as it reflected upon the Tiberts.

In accordance with Rule 6.11(2) of the North Dakota Rules of Court, this Judge did prohibit predeliberation discussions among the jurors and admonished the jurors at the beginning of the

trial and at adjournments not to discuss the case among themselves or anyone else and not to form an opinion until all the testimony and evidence, final argument and instructions have been given to them and they begin their deliberation. At the beginning of trial, this judge also advised the jurors to notify the bailiff or court staff if someone tries to talk to them about the case. It is emphasized that at no time during the trial did any juror advise the court of the comments allegedly made by Ms. Gillespie or any other jurors and it was not until the filing of the Wilson affidavit that this was brought to the Court's attention.

These comments allegedly made by Ms. Gillespie during the trial could be based upon what she learned during the trial and are not necessarily reflecting some prejudice she had about the Tiberts at the beginning of trial or something she knew outside of the trial. Rule 6.11(a)(1) allows a court to allow predeliberation discussion in a civil case admonishing the jurors to discussing only when all jurors are present and to reserve judgment about the outcome of the case until deliberation commences. The comments allegedly made by Ms. Gillespie and other female jurors were made in and around the jury room and are characterized by Mr. Wilson as "statements" or "comments". There is no allegation of discussion among the jurors following the making of these statements or comments. Though these comments, if they were in fact made, and the similar comments of other female jurors, if they were in fact made, are in violation of the procedural rule this Court imposed upon the jurors and should have been brought to the Court's attention during the trial rather than weeks later, this Court finds, for the reasons addressed previously in this paragraph, that these comments would not materially affect the substantial rights of the Tibert defendants.

The affidavit by Mr. Narro relates only statements allegedly made during jury deliberations. Paragraphs 4, 5, 6, 7, and 8 of Mr. Narro's affidavit cover specific statements made by him and Ms. Gillespie occurring during the course of the jury's deliberation, their positions taken during deliberation and his own mental processes in connection with reaching a verdict. This affidavit is clearly inadmissible under Rule 606(b) of the North Dakota Rules of Evidence. None of the statements made in his affidavit relate to whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Therefore Mr. Narro cannot testify about the matters covered in his affidavit and his affidavit is inadmissible under Rule 606(b). . . .

The only other supporting document filed by the Defendant in support of their motion was Gerald Mell's letter to the Court in which he states that he ". . . found out after it was over that Linda Gilespie (sic) could very easily have set (sic) on our jury for vengful (sic) reasons." This letter is not in affidavit form as required by Rule 59(b)(2) and therefore does not constitute proof of juror misconduct.

There is insufficient proof of juror misconduct materially affecting the substantial rights of a party in this case. Therefore, the Defendants' Motion for New Trial on the basis of jury misconduct must be denied.

[¶ 36] The district court's letter indicated it sent Mell's letter to the attorneys for informational purposes, and we are not persuaded the court was inviting the Ti-

berts to solicit affidavits from the jurors to establish misconduct by the jury when the court informed the parties about Mell's letter. We nonetheless agree with the court's analysis regarding the affidavits submitted with Tiberts' new trial motion and conclude the court did not err by not conducting further evidentiary hearings on this issue. We conclude that the district court's decision was the product of a rational mental process leading to a reasoned determination, was not arbitrary, capricious, or unreasonable, and was not based on a misinterpretation or misapplication of the law. We therefore conclude that the district court did not abuse its discretion in denying Tiberts' motion for a new trial under N.D.R.Civ.P. 59(b)(2).

## V. Motions for Judgment as a Matter of Law under N.D.R.Civ.P. 50(b)(1)(C)

[¶ 37] Tiberts argue the district court erred by denying their original and renewed motions for judgment of dismissal as a matter of law under N.D.R.Civ.P. 50. They, specifically, argue Minto Grain failed to present sufficient evidence at trial to support a claim for "tortious interference with business" and a claim for "tortious interference with contractual relations."

[¶ 38] During trial, Tiberts made oral motions to dismiss all the claims of Minto Grain under N.D.R.Civ.P. 50(a) based upon insufficiency of the evidence at the close of Minto Grain's case-in-chief, at the conclusion of Tiberts' case-in-chief, and following Minto Grain's rebuttal evidence. Although these grounds were not specifically argued in Tibert's written motions for judgment as a matter of law under N.D.R.Civ.P. 50(b)(1)(C), Tiberts assert these motions were sufficiently renewed after trial.

[¶ 39] In the district court's memorandum opinion and order denying the defendants' renewed motions for judgment as a matter of law, the district court addressed only the grounds explicitly raised in both Tiberts' "consolidated motion" and William Tibert's "separate motion" to dismiss as a matter of law under N.D.R.Civ.P. 50(b)(1)(C). In its memorandum opinion, the court considered whether its decision granting summary judgment precluded the jury from determining whether any of the Tiberts acted in concert to establish joint and several liability, stating: "As this issue serves as the sole basis for the Motion for Judgment as a Matter of Law brought by all four Defendants, that motion shall be denied." Although Tiberts assert they renewed all of their Rule 50 motions, the court concluded this was the only issue raised in its post-trial "consolidated motion" for motion for judgment as a matter of law under N.D.R.Civ.P. 50(b)(1)(C).

[¶ 40] As the Tiberts did in their briefs in support of their post-trial motions for judgment as a matter of law, they assert in their brief on appeal the following in a footnote: "The Tibert defendants/appellants in the instant appeal hereby incorporate by reference herein all arguments which were made by defense counsel on the record in support of both the defendants' above-referenced oral Rule 50 motions for a judgment of dismissal as a matter of law, as well as those written arguments which were made in *renewed* Rule 50 motions for judgments of dismissal as a matter of law following the return of the jury's verdict in this case...." (Emphasis in original.) We do not approve Tiberts' use of footnotes to "incorporate" and "renew" arguments. Nor were these arguments raised in Tiberts' new trial motion under N.D.R.Civ.P. 59. Had the Tiberts' assertions that the district court erred in denying their Rule 50 motions to dismiss all of Minto Grain's claims upon insufficiency of the evidence been raised, we conclude their arguments would be unavailing.

[¶ 41] Tiberts assert on appeal that Minto Grain failed to present competent evidence to show any of Tiberts' actions proximately caused any harm to any "business proposal" which Minto Grain may have had from BNSF railway to develop a 110–car load-out facility. Tiberts assert that William Slominski admitted at trial that the project was a "dead horse" before the fall of 2001 and that Minto Grain did not even have clear title to the roadway known as "Kilowatt Drive" until years later after litigation concerning the street's status. Tiberts argue that Minto Grain did not demonstrate there was even "a possibility" they would have obtained some economic benefit in absence of any interference on the part of Tiberts. With respect to Minto Grain's claim for tortious interference with contractual relations, Tiberts assert that Minto Grain failed to show any conduct of the Tiberts proximately caused any breach of contract or that Tiberts' conduct proximately caused any damages or appreciable financial injury to Minto Grain.

[¶ 42] In submitting the case to the jury, the district court gave instructions, including jury instructions on proximate cause, unlawful interference with business, intentional interference with contract, nuisance, trespass, in addition to a number of instructions relating to damages. The damages instructions included defining damages, the burden of proving damages, and the duty to mitigate damages. Specifically, the instruction for "unlawful interference with business" stated, in part:

> To prove a claim for unlawful interference with business, the Plaintiff must establish the following by the greater weight of the evidence: 1. The existence of a valid business relationship or expectancy between the Plaintiff and the BNSF or Plaintiff's contractors or customers; 2. Knowledge by the Defendant of the relationship or expectancy; 3. Defendant's interference with the relationship or expectancy by committing an independently tortious or otherwise unlawful act; 4. Defendant's interference was a proximate cause of the harm sustained; 5. Plaintiff was actually damaged.

This instruction also provided, "The Plaintiff claims that the Defendant committed the following independently tortious or otherwise unlawful conduct: defamation, nuisance, trespass, malicious prosecution and assault and battery."

[¶ 43] The instruction for "intentional interference with contract" stated: "To establish a claim for intentional interference with contract, the Plaintiff must prove by the greater weight of the evidence: 1) A valid contract existed; 2) The contract was breached; 3) A Defendant intentionally instigated the breach, or acted with knowledge that the breach would result, and 4) There was no justification for a Defendant's act." This instruction further provided: "An act that interferes with a contract is justified if it is done with a legitimate business purpose and no improper means are used. An act that interferes with a contract is not justified if its indirect purpose is to injure the Plaintiff or benefit a Defendant at the Plaintiff's expense."

[¶ 44] Tiberts concede on appeal that Minto Grain presented a "parade of witnesses" testifying to a number of "regrettable hot-headed incidents" by Tiberts individually and collectively, but that had no effect on whether or not Minto Grain was able to build a 110–car load-out facility. However, our review of the record suggests that Minto Grain presented extensive evidence to support their claims. There is evidence in this record that Tiberts, individually and collectively, hindered and interfered with construction, ex-

cavation, and surveying on land for Minto Grain's improvements to its property to facilitate expansion. There is evidence of refusal to move vehicles and personal property from Minto Grain's property, threatening conduct toward Minto Grain's employees, contractors, and customers, and criminal charges including trespass and disorderly conduct with numerous reports filed with law enforcement regarding conflicts between the Tiberts and Minto Grain.

[¶ 45] There is also evidence that Tiberts were aware of Minto Grain's expansion plans and evidence regarding Tiberts' efforts to prevent third parties from doing business with Minto Grain. Minto Grain presented evidence of letter agreements with BNSF calling for BNSF to subsidize their expansion depending on the size of the expanded facility and requiring Minto Grain to use all of its railroad right-of-way. Minto Grain invested more than $267,000 in improvements to complete the expansion project. There is evidence which supports an inference that Tiberts' actions and interference caused harm to Minto Grain. Minto Grain presented evidence that the Tiberts' continued trespass caused the loss of financing, preventing Minto Grain from closing any deal with BNSF, and the loss of the BNSF contract. Further, there is expert testimony that as a result of Minto Grain's failure to expand the facility, Minto Grain suffered damages of $6.8 million. At a minimum the evidence supports the inference that Tiberts' wrongful actions prevented Minto Grain from carrying out planned expansion of its facilities and interfered with Minto Grain customers, and supports the jury's award of damages.

[¶ 46] Viewing the evidence in the light most favorable to Minto Grain and accepting the truth of the evidence and all reasonable inferences which support the verdict, the evidence favoring the verdict is not so insufficient that reasonable minds could only reach but one conclusion. We therefore conclude the district court did not err in denying Tiberts' "consolidated motion" for judgment as a matter of law under N.D.R.Civ.P. 50(b)(1)(C).

## VI. "Independent Reversible Error"

[¶ 47] Tiberts argue the district court committed "independent reversible error" by admitting into evidence one of Minto Grain's exhibits, which Tiberts assert constituted a "self-serving, factually-incorrect hearsay document authored by plaintiffs' counsel entitled 'Civil Litigation Summaries.'" Tiberts also argue the court erred in failing to admit actual court documents offered as evidence by them, which purportedly revealed the legitimacy of their actions. However, these evidentiary issues were not raised in Tiberts' new trial motion and, in accord with our discussion in Section III, we conclude they were not preserved for review in this appeal.

## VII. "Noerr–Pennington Doctrine"

[¶ 48] Tiberts argue that the district court erred in failing to grant the Tiberts' Rule 50 motion for judgment of dismissal as a matter of law based upon the "Noerr–Pennington Doctrine" or "Petition Immunity" grounds. They also claim the court erred in refusing to give their requested jury instruction incorporating the Noerr–Pennington Doctrine, which erroneously permitted the jury to find them liable to Minto Grain. Tiberts claim they first raised arguments about the Noerr–Pennington Doctrine in their motion for summary judgment. Tiberts also claim that during trial, they argued the Noerr–Pennington Doctrine in their motion for judgment as a matter of law at the conclusion of Minto Grain's case-in-chief and then sought to have the district court instruct the jury on "Noerr–Pennington/Petition Immunity," which the court rejected.

They claim they then renewed their Rule 50 motion again after the presentation of all evidence, which was again denied by the court. Tiberts assert their written motion for judgment as a matter of law, which "reiterated, incorporated by reference, and reasserted" the Rule 50 motions made during trial was sufficient to preserve this issue for appellate review. We disagree. This issue was not raised in Tiberts' new trial motion, and, in accord with our discussion in Section III, we therefore hold that Tiberts failed to preserve this issue for review on appeal.

## VIII. William Tibert's Separate Motions

▮ [¶ 49] William Tibert argues Minto Grain failed to present any competent evidence that any action by him proximately caused any financial injury or damage to Minto Grain, and the jury's award of $305,000 against him was not supported by any evidence. William Tibert asserts there was no evidence that any of his conduct proximately caused any damages to Minto Grain under the claims for unlawful interference with business, intentional interference with contract, or nuisance.

[¶ 50] In its memorandum decision and order denying William Tibert's renewed motions for judgment as a matter of law, the district court addressed the issues and specifically considered "[w]hether there was a legally sufficient evidentiary basis for a reasonable jury to find that . . . William's actions were the proximate cause of any damages. . . ." The district court reiterated that there had been three weeks of trial testimony from numerous witnesses and over 130 exhibits received into evidence. The court said William Tibert's summary of the evidence was "understated and minimized." The district court provided the following analysis:

A review of the Special Verdict returned by the jury in this case reveals that the jury found William's percentage of fault to be less than Mark, Melvin and Suzi, on the unlawful interference with business, intentional interference with contract, and nuisance claims and the jury found him not at fault for trespass on [Minto Grain's] property. But the jury also determined on the unlawful interference with business, intentional interference with contract, and nuisance claims for which William was held at fault, that he acted in concert with the other three defendants, Mark, Melvin, and Suzi. Clearly these findings support that the jury weighed the testimony and evidence to arrive at their findings.

This Court finds that [Minto Grain's] summary of various witnesses' testimony accurately depicts the testimony presented at trial against William. Some of that testimony included the following testimony which is sufficient to over come [sic] Defendant's motion for judgment as a matter of law: the testimony by Plaintiff William Slominski as to the interference that he dealt with on a continuing basis from all the Tibert Defendants, including interference with his expansion plans, his contract with the railroad, interference with customer contracts, contracts he had with other contractors working on the expansion of the grain facilities, and with employees; William Slominski's testimony as to the damages he incurred and the additional testimony of Leonard Silwoski as to the economic losses incurred by the Plaintiffs due to the loss of the railroad contract; Kenneth Slominski's testimony that William Tibert refused to work on his truck because he sold grain to [Minto Grain] and that Drummer's Diesel informed him they would not work on his truck after they had been contact[ed] by Tiberts shows a direct interference with the Plaintiffs' contract with a customer of Minto Grain; testimony that William

Tibert refused to continue doing business with Rod Schuster after Rod's brother made some decisions relating to Minto Grain's expansion as City Council member which Mark and Melvin Tibert were unhappy with and testimony that William also threatened Rod that it would not be a good idea for him to tow vehicles for William Slominski; Kevin Bolek's testimony that he was threatened by William Tibert when he was doing some excavation on the Slominski property for the expansion of their grain facility and which ultimately caused Kevin not to complete his work for Minto Grain. In conjunction with the above testimony, there was testimony that William worked with Melvin Tibert on a daily basis and that William supported his brothers in opposing the expansion of the Plaintiff's elevator. This testimony provides sufficient evidentiary basis for a reasonable jury to infer William acted in concert with Melvin, Mark, and Suzi.

[¶ 51] The district court concluded there was a sufficient evidentiary basis for a reasonable jury to find William Tibert's conduct interfered with Minto Grain's business, intentionally interfered with contracts to which the Plaintiffs were parties, and was a nuisance, all of which were the proximate cause of Minto Grain's damages.

[¶ 52] The district court concluded the evidence supported a reasonable inference that William Tibert acted in concert with Melvin, Mark and Suzi Tibert and therefore William Tibert could be held jointly and severally liable for damages. Although William Tibert argues on appeal that Minto Grain failed to present any "competent evidence" that he proximately caused damage to Minto Grain, the district court rejected his claims about proximate cause in denying his renewed motion for judgement as a matter of law.

[¶ 53] Based upon our review of the record, viewing the evidence supporting the jury verdict in the light most favorable to Minto Grain, the evidence is not so insufficient that reasonable minds could reach only one conclusion as to the verdict. We therefore conclude the district court did not err in denying William Tiberts' separate motion for judgment as a matter of law under N.D.R.Civ.P. 50(b).

IX

[¶ 54] We have considered the remaining issues and arguments raised by the Tiberts and determine they are either unnecessary to our decision or without merit. The district court judgment is affirmed.

[¶ 55] WILLIAM F. HODNY, S.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶ 56] The Honorable WILLIAM F. HODNY, S.J., sitting in place of CROTHERS, J., disqualified.